**CITY OF FORT WORTH et al. v. ZANE-CETTI et al.**

No. 1361—5506.

Commission of Appeals of Texas, Section A.

June 25, 1930.

R. E. Rouer, Smith & Rowland, and R. M. Rowland, all of Fort Worth, for plaintiffs in error.

C. C. Gumm and A. J. Clendenen, both of Fort Worth, for defendants in error.

SHARP, J.

For a partial statement of the nature and result of this case, we adopt from the opinion of the Court of Civil Appeals for the Second Supreme Judicial District the following:

"Plaintiffs, Carl Zane-Cetti, A. J. Long, James Harrison, W. H. Smith, Thomas B. Van Tuyl, C. A. Boaz, T. B. Petty, G. H. Colvin, J. E. Burton and George W. Birchfield, filed suit against the city of Fort Worth, its mayor and commissioners, and the city tax assessor and collector Albert Tankersley, to enjoin them from assessing and collecting for school purposes 36 cents on the $100 valuation of property in said city. Plaintiffs alleged that each of them was, on January 1, 1922, and ever since that date the owner of both real and personal property situated within the city of Fort Worth, and subject to taxation 'for all the purposes which by law the property located in said city is so subject to taxes.' The defendant, city of Fort Worth, is a municipal corporation, existing under a special charter granted to it by the Legislature of the state of Texas, in the year 1909, and defendant E. R. Cockrell is mayor of said city, duly elected, qualified, and acting as such, and defendants John Alderman, W. B. Townsend, Paul Gilvin, J. C. Lord, and R. A. Hunter, are each and all members of the board of commissioners, and that defendant Albert Tankersley is the assessor and collector of taxes of said city, and that each and all of said defendants held the positions above named at the several dates of the happening of the several matters hereinafter alleged.

"The first amended original petition, in substitution of and in lieu of the original petition filed November 22, 1922, was filed June 25, 1923, and alleged:

"That on, to wit, July 11, 1922, the said city of Fort Worth being a city of more than 5,000 inhabitants, and the defendants being desirous of having the charter of said city amended in several respects, in pursuance of section 5, art. 11, of the Constitution of the state of Texas, and in accordance with an amendment to the Constitution adopted at an election held on November 5, 1912, the said mayor and city commissioners did on said July 11th, at a regular meeting thereof, make and publish the following proclamation and notice of an election to be held in the city of Fort Worth, to wit:

" 'The qualified voters of the City of Fort Worth are hereby notified that on July 22, 1922, between the hours of 8 o'clock a. m. and 7 o'clock p. m., there will be held in said City of Fort Worth an election, at which 5 proposed amendments to the existing charter of said City will be voted upon by the qualified voters of said City. Copies of said proposed amendments have been substantially set out in notices and ordinance duly published

in the official newspaper of said City of Fort Worth, in connection with the ordering of such election; also copies of said proposed amendments have been, or will be mailed in accordance with law by the city secretary's office to all qualified voters of said City according to the official poll tax list.'

"That one of the propositions to be voted on at said election was as follows:

"'Shall sections 14 and 15 of Chapter XV of the existing charter of the City of Fort Worth be amended so as to hereafter read as follows:

"'Section 14. School Taxes, Rate of; Levy and collection; Expenditure by Trustees. The Board of Commissioners of the City of Fort Worth shall have no discretion in fixing the rate at which taxes shall be assessed and levied each year for the benefit of public free schools, provided such rate does not exceed 86 cents on each $100.00 of value of the property subject to taxation, but shall assess and levy the rate fixed annually by the Board of Trustees of the Independent School District of the City of Fort Worth up to and including the rate of 86 cents on each $100.00 of the value of the property, subject to taxation as aforesaid, and it shall become the duty of the Board of Commissioners, to annually levy and collect said taxes as other taxes are levied and collected, and said tax when collected shall be placed at the disposal of said Board of Trustees by paying over monthly to the Treasurer of said Board of Trustees the amount collected for the support of the public free schools of Fort Worth, to be used for the maintenance, support and use thereof. Said authorized rate of 86 cents on the $100.00 shall be in addition to and independent of all other taxes provided for in this charter.

"'Section 15. School Taxes; School Board to Determine Rate. It shall be the duty of the Board of Trustees of the Independent School District of the City of Fort Worth to determine what amount of taxes, not exceeding 86 cents on each $100.00 of the value of the property subject to taxation, shall be necessary for the support, maintenance and use of the public free schools of the city of Fort Worth for each current year, and the repair, erection and purchase of buildings, and on or before the date upon which the Board of Commissioners is required by this charter to levy general taxes, said Board of Trustees shall certify to the said Board of Commissioners the rate of taxes to be levied for the school purposes, and it shall be the duty of said Board of Commissioners to levy said taxes.'

"That an election was held on July 22, 1922, at which said election all persons whose names were shown on the official poll tax list for the city of Fort Worth were invited to vote, and at which said election all persons who had paid their poll taxes for the year

1921, and all persons who were by law exempt from the payment of poll tax, were permitted to vote, and no other or further qualification was required of the voters by the officers of the election at said election.

"That on July 25, 1922, the defendants, the city commissioners of the city of Fort Worth, met in regular session, and canvassed the votes cast, and found that the charter amendment increasing the tax to be levied for school purpose had passed and had been duly and legally adopted. That on August 31, 1922, the defendants, the city commissioners of the city of Fort Worth, in pursuance of the authority vested in them by law to levy taxes for all taxable purposes for said city, made and entered an order levying taxes, and levied and assessed 86 cents on every $100 property valuation for school purposes, 76.72 cents apportioned for the maintenance of schools, and 9.28 apportioned for the use and benefit of the several series of the city of Fort Worth school bonds.

"Plaintiffs alleged that said election and result thereof was and is illegal and void, because others than property taxpayers who were qualified voters and residents in said city of Fort Worth were invited and permitted to vote at said election, in violation of article 2876 of the Revised Statutes of the state of Texas [Rev. St. 1911, as amended by Acts 35th Leg. 1917, c. 169, § 1].

"This petition was duly verified. Upon presentation of the petition, the trial court held that it was subject to general demurrer. Upon appeal, the Court of Civil Appeals, at Austin, held that the trial court incorrectly sustained the demurrer to plaintiffs' petition and reversed and remanded the cause for new trial, 269 S. W. 130. The defendants made application for writ of error, which was granted, and the Commission of Appeals, approved by the Supreme Court, affirmed the holding of the Court of Civil Appeals in City of Fort Worth v. Zane-Cetti et al., 278 S. W. 183. It was agreed that the suit was tried in the district court on January 25, 1923; the cause was appealed to the Court of Civil Appeals, and on December 17, 1924, the judgment of the trial court was reversed and the cause remanded. Motion for rehearing was denied on January 28, 1925; and a second motion for rehearing was overruled on February 20, 1925. Defendants applied to the Supreme Court for a writ of error, which was granted, and the judgment of the Court of Civil Appeals affirmed December 10, 1925; a motion for rehearing was overruled by the Supreme Court on April 20, 1926. The mandate from the Supreme Court in this cause was received and filed by the clerk of the trial court on May 22, 1926.

"On March 23, 1928, within two years from the final adjudication of the question as to whether the plaintiffs stated a cause of ac-

tion in their suit to enjoin the assessing and levying of increased city taxes for school purposes, the plaintiffs filed their second amended original petition, in which they alleged that they had been required by the city assessor and collector to pay the increased tax for school purposes for the years 1922, 1923, and 1924.

"Plaintiffs alleged that they and each of them offered and tendered to the assessor and collector of taxes payment of all taxes due by them to the city of Fort Worth for all purposes less the claimed illegal and void taxes for school purposes, but said assessor and collector refused to permit plaintiffs, or any of them, to pay their taxes so due the city without including therein the said illegal and void taxes; that during the pendency of the appeal from the judgment of the trial court they were required to pay said illegal and void taxes, in order to prevent a cloud to be cast upon the title of their real estate, and in order to avoid a penalty of one per cent. a month for their entire amount of taxes.

"In the amended petition, ten or eleven others joined as plaintiffs, to wit, Mrs. M. B. Boaz, The Southern Land Company, a corporation, E. O. Boaz, Wallace P. Boaz, Mrs. C. O. Gumm, Mrs. L. B. Comer, Sam D. Boaz, Boaz & Field, O. E. Boaz, C. A. Boaz, trustee, Boaz, Boaz and Boaz, Mrs. Bena Boaz. Plaintiffs sought to recover the taxes alleged to be illegally levied and collected during the three years 1922, 1923, and 1924.

"The defendants answered and the issues were joined. Among other defenses the defendants pleaded the statute of two years' limitation.

"On April 27, 1928, the cause came on regularly for trial, and the defendants presented to the court their general demurrers and special exceptions to the plaintiffs' pleadings, which were by the court overruled. The cause then came on for trial on its merits, and, no jury being demanded, the matters of fact as well as of law were submitted to the court, the cause being tried upon an agreed statement of facts prepared and signed by the attorneys of record for all the parties in the trial court. The court found that all of the tax payments for which recovery was sought in this suit were made more than two years before the filing of any suit to recover them back, with the single exception of the tax payment of J. E. Burton, on May 4, 1926. The court further found that the only parties plaintiff to this suit, as originally filed on November 22, 1922, were the ten parties named as plaintiffs in the original petition, and that all other parties now appearing as plaintiffs were in contemplation of law strangers to said court, and were not before the court in any way whatever until they made themselves parties by joining with the orig-

inal plaintiffs, on March 23, 1928, and that said last named parties were not identified with any suit in any way until the date last named, and are not in a position to claim any benefit from the pendency of the original suit prior to the time they became parties to the suit. Thereupon the court gave judgment for the defendants as to all parties except J. E. Burton, and as to him judgment was awarded for $188.19, with interest and costs. Notice of appeal was given by the plaintiffs, and J. E. Burton excepted to that part of the decree which denied him any recovery on account of tax payments made by him in the years of 1922 and 1923."

The Court of Civil Appeals further says:

"The judgment in favor of defendants and against the plaintiffs sought to be made parties by the amended petition of March 23, 1928, is affirmed. The judgment against the defendant and in favor of J. E. Burton, for the taxes illegally collected for the year 1924, is in all things affirmed. The judgment, both as to him otherwise and as to the other original plaintiffs, is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion."

Upon the motion for rehearing filed by plaintiffs and defendants, the Court of Civil Appeals amended its judgment as follows:

"The judgment heretofore rendered by this court will therefore be reformed and amended so as to entitle nine of the original plaintiffs, all except J. E. Burton, to a recovery of the taxes sued for, with interest thereon as to each payment of the taxes for the three years involved, interest at 6 per cent. to be recovered from date of payment of each year's taxes. Judgment will also be rendered for J. E. Burton for a recovery of taxes paid for the year 1922, and for the year 1923, with interest from dates of payment, in addition to the recovery allowed him by the trial court for the taxes for the year 1924. But otherwise the judgment rendered on original hearing is undisturbed."

■ This record further shows that the Legislature passed a special act, approved and effective March 16, 1925, known as chapter 230 of the Local and Special Laws of the thirty-ninth Legislature, Regular Session, creating the Fort Worth Independent school district, and making it the successor of the Independent school district of Fort Worth. The territory embraced within said new Fort Worth Independent school district included all of the city of Fort Worth and certain other areas outside thereof. This act of the Legislature severed all points of contact theretofore existing between the public school corporation and the municipality of the city of Fort Worth, save and except that it was provided in said act that the taxes for said new district should be assessed and collected through the agency of the city assessor and

collector of the city of Fort Worth. After the passage of this act, the governing body of the city of Fort Worth, which was then the city council, no longer had any power or authority to make any levies of school taxes; that power being vested exclusively in the board of education of the Fort Worth Independent school district. By virtue of the foregoing act of the Legislature, the board of education was given the authority to levy school taxes within the district at any rate not exceeding $1 on the $100 of taxable property, after such rate had first been approved and authorized by vote of the property taxpaying voters in said district at an election held for that purpose. That on June 20, 1925, the qualified property taxpaying voters within said district, at an election duly held, authorized the board to levy school taxes in said district at any rate that said board might deem proper, not exceeding the limit of $1. Accordingly, said board of education levied and caused to be collected and paid over to its official depository a school rate for 1925 of $1 on the $100, and for 1926 and 1927 of 95 cents on the $100. No school taxes for any year subsequent to 1924 have been levied by the governing body of the city of Fort Worth or under the charter amendment attacked by the injunction suit or under any other provision of the charter of the city of Fort Worth, all of said charter provisions relating to schools having been superseded by the act of the Legislature above mentioned. That with the single exception of J. E. Burton's taxes for 1924 all the taxes in controversy that are shown by this record to have been paid were paid more than two years before the filing of any pleading seeking to recover back the money; it further appearing that the plaintiffs have paid the illegal taxes, and that the city of Fort Worth nor the Fort Worth Independent school district were undertaking to levy, assess, and collect any taxes for any purpose by reason of the provisions of the charter heretofore declared to be unconstitutional, and that the act of the Legislature passed in 1925, as above described and approved by the voters as required by law, removed all grounds for injunctive proceedings, and those features of the suit became moot.

On March 23, 1928, the ten plaintiffs in the injunction suit, joined by considerable number of other taxpayers, filed a pleading called "Plaintiffs Second Amended Original Petition," wherein they alleged that each of them had paid his taxes in controversy under protest and under duress, and that the Supreme Court had held the taxes in controversy illegal, and set out the amount of alleged illegal school taxes paid by each of said parties, and prayed for money judgment in favor of each plaintiff for the alleged excessive and illegal taxes collected from him figured at 36 cents on the $100. This amendment to the pleadings changed the nature of the suit, in that the injunctive relief prayed for in the original pleading was abandoned, and the nature of this last amendment changed the suit into an action for the recovery back of tax moneys claimed to have been collected illegally and under duress.

The case was tried before the district court on April 27, 1928, and the defendants urged both by special exception and by plea that the attempt of the plaintiffs, both old and the new ones, to combine and assert in one suit their several causes of action for the recovery of tax moneys paid, involved a misjoinder of parties and causes of action, and they also urged that the cause of action of certain named plaintiffs were for sums below the jurisdictional amount of the district court, and they further urged, both by special exception and by plea, that all of the causes of action sued upon were barred by the statute of limitation of two years. The trial court overruled all the demurrers and exceptions and pleas in abatement, and the case was tried on its merits upon an agreed statement of facts.

■ It is urged by counsel for plaintiffs in error that the Court of Civil Appeals erred in holding that all the original ten plaintiffs, as well as the other persons who were subsequently joined as plaintiffs, could join in one suit for the recovery in favor of each of the alleged illegal taxes collected. It is undisputed, as shown by this record, that plaintiffs' first amended original petition was filed on January 25, 1923, and that in that petition the only relief sought was an injunction to restrain the defendants and each of them from collecting the illegal and void tax pending the final judgment in this cause. It is further undisputed, as is shown by this record, that no claim in the way of a suit was made against the defendants by plaintiffs for the amount of the illegal taxes that they claim had been collected from them, until plaintiffs filed their second amended original petition on March 23, 1928, and in that petition they asked for the first time for a judgment against the defendants for the amount of illegal taxes that they had paid under the charter provisions which the courts had held to be unconstitutional. In view of the fact that all grounds for injunctive proceedings in favor of plaintiffs had long since been abandoned and become moot, and the injunction question being no longer involved in this suit, we are of the opinion that plaintiffs could not maintain a joint suit against the defendants for the amount of taxes they claim each paid to the defendants, and that this assignment should be sustained. See Blum v. Goldman, 66 Tex. 621, 1 S. W. 899; Anderson v. Western Union Teleg. Co., 84 Tex. 17, 19 S. W. 285; Wachsmuth v. Sims (Civ. App.) 32 S. W. 821.

Since this case will be reversed and remanded, we think it proper to discuss some

of the other assignments involving matters that will likely arise during another trial of this case. Plaintiffs in error complain that the Court of Civil Appeals erred in holding that the causes of action of the original ten plaintiffs were not barred by limitation at the time they filed their amended pleading seeking recovery of certain tax moneys paid out by them more than two years before the filing of such amendment.

According to the agreed statement of facts filed by plaintiffs and defendants, and upon which this case was tried, it is shown that the taxes paid by each and every plaintiff in this suit, with the exception of $188.19 paid by J. E. Burton on May 4, 1926, had been paid more than two years prior to the filing of their second amended original petition in this case on March 23, 1928. On the contrary, it is contended by defendants in error that, by reason of their having filed their petition seeking injunctive relief against the collection of illegal taxes by the city of Fort Worth, and that case having been appealed and a final decision thereof not having been reached until April 20, 1926, the statute of limitation was suspended. In view of the foregoing facts already set out, we are of the opinion that this assignment, save and except the item of $188.19 paid by J. E. Burton on May 4, 1924, should be sustained. City of Dallas v. Kruegel, 95 Tex. 43, 64 S. W. 922; Holland v. Shannon (Tex. Civ. App.) 84 S. W. 854; 3 Cooley's Taxation (4th Ed.) art. 1304.

In 3 Cooley's Taxation (4th Ed.) art. 1304, it is said: "As the cause of action accrues at the time of the payment, the statute of limitations begins to run from that time, even though the illegality may not then have been known."

In view of the holding that there is a misjoinder of parties and causes of action in this suit, we think it expedient to pass upon another matter, which will likely arise, and that is the question of jurisdiction. We are of the opinion that, if a person in good faith sues for an amount within the jurisdiction of the court in which the petition is filed, and that the person filing same would be entitled under the law to a judgment for the amount stated in the petition, that court in which the suit is filed would have jurisdiction, although the amount so claimed in the petition could be reduced by defensive pleadings in the way of exceptions or a plea of limitation made thereto. Judge Brown, in the case of Ablowich v. National Bank, 95 Tex. 433, 67 S. W. 79,881, in rendering the opinion of the Supreme Court, lays down what we think to be the correct rule as follows: "The plaintiff in error claims that this court can not enter judgment for the debt because the lien upon the land was not established, and the debt is less than $500. This position is sustained by the following cases decided by this court: Carter v. Hubbard, 79 Tex. 356, 15 S. W. 392; Barnes v. White, 53 Tex. 631; Snyder v. Wiley, 59 Tex. 448; Cameron v. Marshall, 65 Tex. 7. We are of opinion that the rule announced in the cases cited is based upon an erroneous construction of our constitution, and they are hereby overruled."

Again he says: "The decisions cited are antagonistic to the general principle that 'the jurisdiction of the court cannot be defeated when the case stated in the petition is within its jurisdiction, unless it is made to appear that the allegations upon which the jurisdiction depends were fraudulently inserted in the petition for the purpose of conferring the jurisdiction.' Hoffman v. B. & L. Ass'n, 85 Tex. 410, 22 S. W. 155. When a suit has been filed in the district court for a sum exceeding $500, but upon the trial it is reduced to a sum below the jurisdiction of the court, it has been uniformly held that the jurisdiction of the court is determined by the amount which was claimed in the petition, and will not be lost by the fact that the amount is reduced upon the trial. Hoffman v. B. & L. Ass'n, cited above."

However, if the petition upon its face shows that the plaintiff would not be entitled to recover under the law an amount within the jurisdiction of the court, then he has no cause of action that could be asserted in that tribunal, and the rule laid down by our Supreme Court in the case of Telegraph Co. v. Arnold, 97 Tex. 373, 77 S. W. 249, 79 S. W. 8, would govern.

For the reasons herein stated, we recommend that the judgments of the Courts of Civil Appeals and the trial court be reversed, and this cause be remanded to the trial court for further proceedings in accordance with this opinion.

CURETON, C. J.

Judgments of the Court of Civil Appeals and the district court are both reversed, and the cause is remanded to the district court for a new trial, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.