### RAILROAD COMMISSION OF TEXAS et al., Petitioner,

v.

### Thomas M. COLEMAN, Respondent.

### No. B-1812.

Supreme Court of Texas.

Oct. 28, 1970.

Rehearing Denied Dec. 30, 1970.

Crawford Martin, Atty. Gen., Linward Shivers and Rex H. White, Jr., Asst. Attys. Gen., Austin, Lynch, Chappell, Allday, and McDonald, W. E. McDonald, Houston, for petitioner.

Heath, Davis & McCalla, Dudley D. McCalla, Austin, for respondent.

CALVERT, Chief Justice.

The court of civil appeals' statement of the factual background of this case is not questioned by the parties and is adopted as correct. It follows:

"This is a permanent injunction suit filed in a district court of Bowie County by Thomas M. Coleman as plaintiff. The Railroad Commission of Texas and its members, together with Hugh Ray Ashford, are named as defendants. The action is designed to test the validity of an order of the Railroad Commission pooling all unpooled mineral interests underlying the 80-acre proration unit previously formed by the Commission in the one well Simms (4946' Moorings-port) Field in Bowie County, Texas. * * *

"In March, 1955, Coleman leased his one-half undivided interest in the minerals of a 240 acre tract for oil, gas and mineral purposes to R. I. Boyd. Thereafter in July, 1962, Coleman divided the fee· ownership of the land in the leased tract by deeding the Veterans' Land Board of the State of Texas 182.66 acres thereof (together with enough other land to form a 200 acre block); in turn, the Veterans' Land Board conveyed the 200 acres to Ashford. An assignee of the lease drilled a productive oil well on the leased land. The well site was on that part of the 240 acre leased tract retained by and belonging to Coleman. An order of the Railroad Commission forming an 80-acre proration unit made up of 35.25 surface acres belonging to Coleman and 44.75 surface acres belonging to Ashford was secured by the well operator.

"After purchase, Ashford received delay rentals accruing under the Coleman to Boyd oil, gas and mineral lease on the 182.66 acres as rentals fell due prior to production. After production neither rentals nor a portion of production or its value were paid to Ashford. In February of 1966, Ashford petitioned the Railroad Commission of Texas to exercise the power vested in it under the terms of the Mineral Interest Pooling Act, Tex. Rev.Civ.Stat. art. 6008c (1968), and make an order pooling his royalty acreage in the production unit with that of Coleman. The application was granted, and Order No. 6–56, 271 was issued by the Commission approving Ashford's offer to Coleman that the royalty derived from the 80-acre proration unit and theretofore paid to Coleman be ap-

portioned 45% to Coleman and 55% to Ashford. The basis of the apportionment was the ratio of surface acreage each owed [sic] to total acreage in the proration unit, rounded off to the nearest percentage point.

" * * *

"Ashford's application to the Railroad Commission presented that agency with a subdivision-after-lease situation in which the royalty interests in the subdivisions of the proration unit are separately owned. Since Japhet v. McRae, 276 S. W. 669 (Tex.Comm.App.1925, "judg. adopted), in similar situations the royalty owner in the subdivision where the well was located received the entire royalty and none was apportioned to the owner of the undrilled subdivision of the proration unit. University of Texas: Smith, The Texas Compulsory Pooling Act. (Pt 1), Texas Law Review 1003 (1965) and University of Texas, Hardwicke and Woodard, Fair Share and the Small Tract in Texas, Texas L.Rev. 75 (1962). In this instance, the Commission's order effected a compulsory pooling and apportionment of the Coleman and Ashford interests and represents a radical departure from the non-apportionment rule applied by the courts in subdivision-after-lease cases. The Commission based its authority to issue the questioned order squarely upon the provisions of the Mineral Interest Pooling Act."

The trial court denied the relief sought by Coleman. The court of civil appeals reversed the judgment of the trial court upon a holding that Coleman was entitled to a jury trial under the preponderance of the evidence rule as to whether the Commission had given him notice of its hearing, and remanded the cause to the trial court for trial of that issue. 445 S.W.2d 790. We affirm the judgment of the court of civil appeals in so far as it reverses the judgment of the trial court and remands

the cause to the trial court, but we direct that judgment be rendered and entered by the trial court granting Coleman the relief sought.

▮ One of the contentions presented by Coleman in the trial court and preserved on appeal in a point of error is that an owner of a mere royalty interest in oil or gas, such as Ashford, may not invoke the provisions of Art. 6008c, Vernon's Ann.Tex.Civ.Stats., the compulsory pooling act. The court of civil appeals overruled this contention, but we sustain it; and, inasmuch as our holding on this question forecloses any possibility of judicial approval of the Commission's order, we can find no sound basis for considering and deciding the type of trial required on the issue of notice.

Sec. 2(a) of Art. 6008c provides:

"When two or more separately-owned tracts of land are embraced within a common reservoir of oil or gas for which the Railroad Commission * * * has established the size and shape of proration units, * * * and where there are separately-owned interests in oil or gas embraced within an existing or proposed proration unit in the common reservoir, and the owners have not agreed to pool their interests, and where one or more of the owners have drilled or propose to drill a well on the proration unit to the common reservoir, the Commission, to avoid the drilling of unnecessary wells, or to protect correlative rights, or to prevent waste, shall, on the application to the Commission of *any such owner*, establish a unit and pool all of the interests therein within * * * such proration unit, * * *"[1]

It will be noted that the Railroad Commission is authorized by the statute to establish a unit and pool all the interests therein *only* upon the application of "any such owner." Crucial to a decision of the question before us is a determination of

1. Emphasis ours throughout unless otherwise indicated.

whether, under a proper interpretation of the statute, a royalty owner is "any such owner." The court of civil appeals thought so; it pointed out, quite correctly, that three classes of owners are referred to in the statute, to wit: (1) owners of separate tracts of land within a common reservoir for which the Commission has established proration units; (2) owners of separate interests in oil or gas embraced within an existing or proposed proration unit in the common reservoir, and (3) owners who have drilled or propose to drill a well on a proration unit to the common reservoir. The court then proceeded to hold that the phrase, "any such owner", refers to any person in any of the three categories of owners, and that Ashford is a member of both of the first two categories. We disagree.

■ We interpret the language quoted from section 2(a) of the statute as authorizing invocation of the Commission's power to pool by only those owners who have drilled or propose to drill on the proration unit to the common reservoir; that only a person who has drilled or proposes to drill can qualify as "any such owner."

We recognize that one of the expressed aims of the compulsory pooling statute—protection of correlative rights—may not be accomplished if, as in the instant subdivision-after-lease Japhet v. McRae situation, a nonsharing royalty owner cannot compel apportionment. On the other hand, we are satisfied that it was not the purpose or intention of the Legislature in enactment of the statute to abolish the Japhet v. McRae nonapportionment rule; and, absent a clear expression of that intent by the Legislature, we would be reluctant to hold that the statute abolished a rule of property which at the time of the statute's enactment had existed for some forty years.

In his article in 43 Texas Law Review 1003, 1023–1034, Professor Ernest E. Smith marshals the arguments for and against an interpretation of Art. 6008c

which would authorize royalty owners to invoke the Railroad Commission's compulsory pooling power. The arguments against such an interpretation are far more cogent and convincing.

The first argument against the interpretation is, of course, the grammatical structure of the sentence; grammatically, the phrase, "any such owner", plainly refers to "owners [who] have drilled or propose to drill a well on the proration unit to the common reservoir." A nonparticipating royalty owner cannot be in that category of owners. Proper grammatical construction of the sentence is not the sole basis for our conclusion.

Under the terms of the statute, one applying to the Commission must "set forth in detail the nature of voluntary pooling offers made to the owners of the other interests in the proposed unit, and the Commission shall dismiss such application if it finds that a fair and reasonable offer has not been made by the applicant." With Professor Smith, we ask and answer:

"What sort of an offer can the owner of an undrilled tract under lease possibly make? He cannot offer to give up part of his royalties because he is not entitled to any royalties. He cannot offer to give up the right to have his tract developed because no drilling permit could be legally issued for his tract. He can merely 'offer' to take a share of the royalties which the lessee is quite legally paying to the owner of the tract where the well is located. That this can be the type of 'voluntary pooling offers' required by subsection 2(a) is, to say the least, an unlikely reading of the act." (43 Texas L.Rev. 1033)

And if a nonparticipating royalty owner in a *Japhet-McRae* subdivision-after-lease situation can invoke the provisions of the statute, it must follow that royalty owners in tracts independently owned and leased to different lessees can also do so. This result, as Professor Smith points out, would authorize an owner of a nonpartici-

pating interest to "exercise a discretion vitally affecting the rights of the working-interest owner, and yet be without any responsibility for working out the complexities of a joint operation."

Finally, if the phrase, "any such owner", is held to refer to the second category of owners (those owning separate interests in the oil or gas in the proration unit), over-riding-royalty and oil-payment owners could also invoke the provisions of the statute with even less responsibility in the situation. We cannot believe the Legislature intended any such result.

The two arguments most strongly urged for holding that royalty owners in Ashford's situation can invoke the provisions of the statute are: (1) that the Legislature surely intended by the statute to abolish the nonapportionment rule of Japhet v. McRae and thus to destroy its inequities; and (2), the Texas statute bears some similarity to statutes of other states which do permit royalty owners to invoke compulsory pooling. These arguments deserve brief comment.

Japhet v. McRae was decided in 1925. If it bred inequities, they were recurring for nearly half a century before the Legislature enacted Art. 6008c. On the other hand, the legislative action came fairly quickly after this court's decisions in Atlantic Ref. Co. v. Railroad Comm'n, 162 Tex. 274, 346 S.W.2d 801 (1961) (usually referred to as the *Normanna* decision), and Halbouty v. Railroad Comm'n, 163 Tex. 417, 357 S.W.2d 364 (1962) (usually referred to as the *Port Acres* decision), and it seems far more logical to assume that the intention of the Legislature in enacting Art. 6008c was to save the owners and lessees of small tracts from the devastating effect of those decisions.

Reference to similarities in other state statutes as an argument in support of Ash-ford's position is self-defeating; the dissimilarities are far more crucial. Professor Smith points out in his law review article, supra, that the statutes of eight states contain provisions like the Colorado statute which uses this language: "When two or more separately owned tracts are embraced within a drilling unit, or when there are separately owned interests * * * the Commission * * * may enter an order pooling all interests in the drilling unit for the development and operation thereof." The quoted language is, indeed, quite similar to the language of section 2(a) of the Texas statute, but the Colorado statute provides for Commission action "upon the application of *any interested person.*" If the Texas statute contained equivalent language, we would be far more impressed with the law in those states. It seems to be admitted that the Texas statute was patterned after the New Mexico statute, and that the language of the two statutes is in many respects similar; however, the New Mexico statute authorizes the regulatory authority to require pooling *without application.*

After considering all of the arguments for a contrary holding, we remain convinced that the Legislature intended that the Railroad Commission's power to require pooling can be invoked only by an owner who has drilled or proposes to drill a well on a proration unit to a common reservoir. If we be mistaken in our conclusion, the Legislature will meet in regular session in January, 1971, and can provide by legislation, without equivocation, for invocation of the provisions of 6008c by owners of other interests in the oil or gas in proration units in a common reservoir.

The judgment of the court of civil appeals is modified to direct that the trial court grant the permanent injunction sought by Thomas M. Coleman, and, as thus modified, the judgment is affirmed.