**NORTHWEST OIL COMPANY et al.,**
*Appellants,*

v.

**The RAILROAD COMMISSION of Texas et al., Appellees.**

**No. 7185.**

Court of Civil Appeals of Texas, Beaumont.

Jan. 7, 1971.

Rehearing Denied Jan. 28, 1971.

McDonald, Sanders, Ginsburg, Phillips, Maddox & Newkirk, Fort Worth, for appellants.

Crawford Martin, Atty. Gen. of Texas, Rex H. White, and Linward Shivers, Asst. Attys. Gen., McGinnis, Lochridge, Kilgore, Byfield, Hunter & Wilson, Austin, for appellees.

KEITH, Justice.

The appeal is from a final judgment of the District Court of Orange County, denying to Northwest Oil Company and Malcolm K. Brachman any relief from two orders of the Railroad Commission entered pursuant to the provisions of Article 6008c, Vernon's Ann.Civ.St., the Mineral Interest Pooling Act. The case was tried under the substantial evidence rule of procedure and the parties are not in disagreement as to this facet of the case.

Gas was discovered in 1962 in what the Commission subsequently designated as the Ten Mile Creek (2nd Nodosaria) Field in its orders. The proration unit rule promulgated by the Commission provided for 320 acres plus 10 per cent tolerance up to 352 acres. Brachman, pursuant to the usual Commission procedures then prevailing, established a 320-acre unit and in January, 1965, drilled a producing gas well thereon known as the No. 1 B. Redding Well. Northwest Oil Company is the operator of the well.

The appellees, E. B. Stephenson, M. B. Stephenson, and Mrs. James C. Dowler, brothers and sister (hereinafter referred to collectively as "Stephensons"), each owned in fee a tract of land containing slightly more than two acres, or an aggregate of 6.198 acres, all of which was situated entirely within the exterior bound-

aries of Brachman's unit. Their land was located about 1,000 feet from the producing well which Brachman drilled.

Before he commenced drilling, Brachman made overtures to the Stephensons to include their acreage in the unit upon which he subsequently drilled his producing well. Under our view of the law governing the case, it is sufficient to say that no agreement was reached and Brachman proceeded to drill his well and no part of the revenue from the production has been paid to the Stephensons.[1]

Accepting the implied invitation of the appellees that the orders of the Commission may find support only in the subsequent efforts of the Stephensons to pool their land with that of Brachman, we turn to a consideration of those negotiations.

On August 23, 1967, the Stephensons filed an application with the Commission under the Mineral Interest Pooling Act for the entry of "an order permitting their 6.198 acres (2.066 acres for each applicant) to be pooled on a productive acreage basis with all interests in the Northwest Oil Company #1 B. Redding Gas Unit (34101), 320 acres, Ten Mile Creek (Nodosaria, 2nd) Field, Orange County, Texas." The application described the Stephenson acreage as having "been made 'island acreage' by the exclusion of such small tract acreage from the Northwest Oil Company #1 B. Redding Gas Unit." The application recited that if granted, such "will protect the correlative rights of these applicants since they have been and will continue to be drained by the Northwest Oil Company #1 B. Redding Gas Unit well and will avoid the drilling

1. This was subsequent to the decisions of our Supreme Court in Atlantic Refining Co. v. Railroad Commission, 162 Tex. 274, 346 S.W.2d 801 (1961) (usually referred to as the Normanna decision), and Halbouty v. Railroad Commission, 163 Tex. 417, 357 S.W.2d 364 (1962) (usually referred to as the Port Acres decision), but prior to the effective date of the Mineral Interest Pooling Act. The Railroad Commission and the Stephensons have filed a joint brief in which we find this statement: "Appellees have grave doubts and question as to whether the Railroad Commission has the legal authority to force pool under the Mineral Interest Pooling Act based *solely* on an offer made to pool prior to the effective date of the Mineral Interest Pooling Act and the Appellee Railroad Commission of Texas reserves this point for future litigation which may involve this particular point." (Emphasis in original.)

of unnecessary wells on the applicants' lands and the request for a special allowable for said wells."

It was then alleged that "Applicants have not been provided a reasonable opportunity to pool voluntarily. In law no pooling offers have been made to applicants by Northwest Oil Company or its representatives. All alleged offers made to applicants are shown by the attached letters dated August 11, 1964 [see footnote 1, supra], and June 1, 1967, from Attorneys for Malcolm K. Brachman." Further allegations were to the effect that the Stephensons had made "fair and reasonable offers for the voluntary pooling" of their interests, and referred to letters dated August 17, 1964 (see footnote 1), and June 20, 1967, the latter being from trial counsel for the Stephensons, written long after the cost of the well had been recouped by Brachman, and at a time when it was still a prolific producer of gas.

We pause to note that at no time in the correspondence, the application to the Commission, or in the testimony adduced upon the trial of the cause, did the Stephensons allege or contend that they had any intention ever to drill for gas upon their acreage. Upon being questioned about the matter upon the trial, E. B. Stephenson, who acted as spokesman for all three applicants, testified that he had no money to put up to drill the well. We reproduce in the margin a part of his re-direct examination with reference to his position in the matter *before* the well was drilled.[2]

This case is controlled by the opinion of the Supreme Court in Railroad Commission of Texas v. Coleman, 460 S.W.2d 404, (1970; motion for rehearing overruled December 31, 1970), reversing Coleman v. Railroad Commission, 445 S.W.2d 790 (Tex. Civ.App.—Texarkana, 1969).[3] Chief Justice Calvert's interpretation of the Mineral Interest Pooling Act and the limitation upon the power of the Commission to pool is set out in these two short quotations from the court's opinion:

"We interpret the language quoted from section 2(a) of the statute *as authorizing invocation of the Commission's power to pool by only those owners who have drilled or propose to drill on the proration unit to the common reservoir;* that only a person who has drilled or proposes to drill can qualify as 'any such owner.' [460 S.W.2d at p. 407]

\*     \*     \*     \*     \*     \*

"After considering all of the arguments for a contrary holding, we remain convinced that the Legislature intended that *the Railroad Commission's power to require pooling can be invoked only by an owner who has drilled or proposes to drill a well on a proration unit to a com-*

2. "A My letter [written in 1964] proposed that Mr. Brachman stand the drilling costs, my prorata share of drilling costs if I am permitted to pool with him and he would recover those drilling costs from production of the well.
"Q But if the well were to be dry, then you did not want to have to pay any part of the drilling costs, is that right?
"A This was part of my proposal, yes, sir.
"Q And that indicated your business attitude toward this matter at that time, did it not?
"A Yes, sir. I did not feel that I could put up any money as a risk.
"Q And you were not willing to do so, is that right?
"A *I had none, sir, to put up.*" (Emphasis supplied.)

3. The trial of this cause commenced five days after the granting of the writ by the Supreme Court in *Coleman*; and, counsel for the parties may be excused for not having then fully appreciated the effect of the granting of the writ. Although the writ was granted on the Commission's point with reference to the type of trial procedure for use on the notice question upon which the opinion in the Court of Civil Appeals was based (445 S.W.2d 790) and Coleman's application was denied, the Supreme Court could "find no sound basis for considering and deciding the type of trial required on the issue of notice." (460 S.W.2d at p. 406.) It then proceeded to consider and sustain one of Coleman's contentions which had been rejected by the Court of Civil Appeals.

*mon reservoir.*" (Id. at p. 408—emphasis supplied.)

We note, particularly, that the court spoke of the Commission's "power to pool" and "power to require pooling" could be invoked "*only by*" an owner who has drilled or proposes to drill to a common reservoir. This choice of words brings the holding within the rationale of Stauffer v. City of San Antonio, 162 Tex. 13, 344 S.W.2d 158, 160 (1961), and State v. Jackson, 376 S.W. 2d 341, 344 (Tex.Sup., 1964). As was said in Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 940 (1935) (cited in *Stauffer* and *Jackson*): "The power of the Railroad Commission to act on this matter is limited to the authority granted by the Legislature."

Thus, the delegated *power* possessed by the Railroad Commission to require pooling could be invoked, under *Coleman*, only by a showing that the applicant for such forced pooling was "an owner who has drilled or proposes to drill * * * to a common reservoir."

The Stephensons did not include any such averment in their application to the Railroad Commission so that they failed to "invoke" the power delegated to the Commission to require pooling. No proof was offered upon the trial of the cause which would tend to support any such position; and, as a matter of fact, it is clear that the Stephensons never at any time either "drilled or propose to drill" a well to the common reservoir. We have here a situation somewhat similar to that faced by the court in Foree v. Crown Central Petroleum Corp., 431 S.W.2d 312, 316 (Tex.Sup., 1968), wherein the court, in discussing the problem of primary jurisdiction, laid another exception to the general rule that the courts are not ousted of jurisdiction "when the administrative agency is powerless to grant the relief sought and has no authority to make incidental findings which are essential to the granting of the relief."

The Commission made extensive "incidental" findings in support of its order, no one of which included a finding that the Stephensons were "such owners" who had either drilled or proposes to drill a well to a common reservoir.

Appellees, in their post-submission brief, contend that appellants are precluded from relying upon the *Coleman Case*, citing the general rule that parties are restricted upon appeal to the theory on which the case was tried in the court below, a rule which has firm support in our law. Appellees point out, appropriately, that no mention was made of the rationale upon which *Coleman* was decided and, further, that appellants stated in their brief that: "It would thus appear that the Act is applicable to the situation now before the Court * * *." This brief was filed eight days before the *Coleman* decision was announced; and, as we have commented upon previously (footnote 3), it is not surprising that the admission was made.

We have no quarrel with the doctrine which confines a party on appeal to his theory urged upon the trial, but here we have a more fundamental question presented, one going to the very bedrock of appellees' claimed right to pool—the *power* of the Commission to order forced pooling at their request. More than a century ago, in Withers v. Patterson, 27 Tex. 491, 496–497 (1864), it was said:

"The jurisdiction of the court means the power or authority which is conferred upon a court, by the "constitution and laws, to hear and determine causes between parties, and to carry its judgments into effect. It is a plain proposition, that a court has no power to do anything which is not authorized by law.

\* \* \* \* \* \*

"\* \* \* court only exercises its jurisdiction when the facts exist which authorize it to do the thing in question. And the question whether the jurisdiction of a court has been exercised or not, is solved by ascertaining whether or not the facts existed which authorized the court to act as it did act."

See also: Templeton v. Ferguson, 89 Tex. 47, 33 S.W. 329, 332 (1895); Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063, 1069 (1926); Morrow v. Corbin, 122 Tex. 553, 62 S.W.2d 641, 644 (1933); National Life Company v. Rice, 140 Tex. 315, 167 S.W.2d 1021, 1024 (1943). Cf. Pope v. Ferguson, 445 S.W.2d 950, 952 (Tex.Sup., 1969).

The Commission had the power, i. e., the jurisdiction, to require the pooling of the mineral interests only when such power was invoked by a person entitled to claim the privileges of the Act. State v. Olsen, 360 S.W.2d 398, 400 (Tex.Sup., 1962), wherein the court reviewed the authorities extensively. See also, Muskrat v. United States, 219 U.S. 346, 356, 31 S.Ct. 250, 253, 55 L.Ed. 246, 250 (1911). And, where the jurisdiction of a court has not been legally invoked, the judgment rendered by it is void. *Olsen*, supra, 360 S.W.2d at p. 402. We have not found a case involving an administrative agency exercising delegated power within a limited sphere which enunciates a contrary rule. Indeed, it appears that there is even more reason to require a clear and concise showing of an invocation of jurisdiction of an agency exercising limited delegated power than it would be in a court of general jurisdiction. Cf. Davis, Administrative Law Treatise, § 29.08; 2 McDonald, Texas Civil Practice (Rev.Vol.1970), §§ 6.07–6.08, pp. 80, et seq.

In Campsey v. Brumley, 55 S.W.2d 810, 812 (Tex.Com.App., 1932, holdings approved), Judge Critz said:

"The jurisdiction of a court is determined, not by the judgment rendered, but by the petition. City of Fort Worth v. Zane-Cetti (Tex.Com.App.) 29 S.W.2d 958. It is settled that the petition must affirmatively show jurisdiction, and a judgment rendered by a county court on a petition which fails to affirmatively plead facts bringing the case within its jurisdiction presents fundamental and reversible error. * * *

* * * * * *

"Jurisdiction of a court is the power or authority by which it takes cognizance of, and decides, cases. If the court has no jurisdiction of the subject-matter of the litigation, any judgment it may render is void. 11 Tex.Jur. 711, § 9 et seq., and notes. Jurisdiction may be said to be of two kinds; of the subject-matter, and of the person. Consent may give jurisdiction of the person, but cannot do so as to the subject-matter. 11 Tex.Jur. p. 715, § 12, and notes. It follows that even if the instant judgment was entered by consent, it is illegal because the petition is insufficient to confer jurisdiction of the subject-matter."

It having been determined that the Commission has *power* to force pooling only when its jurisdiction has been invoked by one who has drilled or proposes to drill, it follows that an order entered in favor of one who has neither drilled nor proposes to drill is beyond the power of the Commission. Being beyond its power, it is void. Campsey v. Brumley, supra; Farmers' Nat. Bank v. Daggett, 2 S.W.2d 834, 839 (Tex. Comm.App., 1928); 46 Am.Jur.2d, Judgments, §§ 22–23, pp. 327–329; 49 C.J.S. Judgments § 19c, p. 48; 34 Tex.Jur.2d, Judgments, § 262, p. 177, et seq.

A void judgment has no legal force or effect and its invalidity may be asserted by any persons whose rights are affected at any time and at any place either directly or collaterally. Southern Surety Co. v. Texas Oil Clearing House, 281 S.W. 1045, 1046 (Tex.Comm.App., 1926); Gentry v. Texas Department of Public Safety, 379 S.W.2d 114, 119 (Tex.Civ.App.—Houston, 1964) error ref. n. r. e., 386 S.W.2d 758 (Tex. Sup., 1965). Furthermore, the attack here was direct, not collateral. Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325, 327 (1895).

We are in entire agreement with appellees when they contend that the Stephensons are within the *class* of owners who are entitled to invoke the jurisdiction

of the Commission to force pooling of their interests, and to that extent, the *Coleman Case* is distinguishable upon the facts. We part company, however, when appellees seek to confine the teaching of *Coleman* to those who have a *right* to drill as distinguished from those who have drilled or propose to drill.[4] The short answer to the contention advanced is that the word "right", interpolated of necessity by appellees, is not to be found in the language used in *Coleman*; instead, the court held that the applicant must not only possess the right, but must have taken overt steps to exercise the right by actually drilling or proposing to drill.

■ Appellees, conceding that there is no substantial evidence that the Stephensons had actually drilled a well, contend that there was no substantial evidence that "the Stephensons did not propose to drill a well," pointing to "incidental" finding No. 13 of the Commission's order reciting that the establishment of the enlarged unit was necessary "to avoid the drilling of unnecessary wells." Our search of the record fails to disclose any substantial evidence supporting such finding, i. e., that the Stephensons proposed to drill a well on their small holdings.

Appellees offered the witness Gardner, whose testimony they bring forward as lending support to their theory that the Stephensons had a *right* to drill on their acreage. Gardner's testimony on the point, as *quoted* by appellees is as follows:

"Q [Mr. Douglass] I believe you testified yesterday there were two possibilities as far as recovery of hydrocarbons from the Stephensons' interest, one, by drilling and two, by pooling?

"A [Mr. Gardner] I believe that's correct. Yes, sir, I remember that.

"Q If pooling is out, if the Stephensons weren't able to pool with adjoining land, they still *had* open to them the availability of drilling a well, is that correct?

"A That's correct." (Emphasis in Brief.)

*Not brought forward by appellees*, is the very next question and answer, which we now produce:

"Q And I believe you indicated that under the normal allowable [authorized by the Commission] that I believe your term was it would be foolhardy for anyone to drill a well on that small an acreage, is that correct?

"A Yes, sir, because the income derived from it would not pay operating costs and it would not return the investment."

Absent other convincing evidence, we decline the invitation to find that the Stephensons were "foolhardy" or that they would be able to procure others to drill a well on their small acreage when such third party could not recoup his investment or pay his operating costs.

Appellees also urge upon us the proposition that an order of the Commission is presumed to be valid [Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424 (1946)], and contend that appellants have not discharged their burden of showing that the order was not reasonably supported by the substantial evidence. We accept and follow the rule so enunciated, but do not reach the proffered conclusion. We readily accept the rule that "where the order of the agency under attack involves the exercise of the sound judgment and discretion of

4. The argument presented is as follows: "It is clear that the Supreme Court [in *Coleman*] was talking about those parties that can invoke the Mineral Interest Pooling Act as being those who have the *right* to drill or the *right* to propose to drill by asking one simple hypothetical question. Why cannot a royalty owner propose to drill a well and thus invoke the Railroad Commission's power under the Mineral Interest Pooling Act? The answer is obvious. The royalty owner does not have the *right* to drill a well; therefore, he could not actually propose to drill a well.' (Emphasis in original.)

the agency in a matter committed to it by the Legislature, the court will sustain the order if the action of the agency in reaching such conclusion is reasonably supported by substantial evidence." Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022, 1029 (1942). Assuming *arguendo*, that this rule so recognized applies to the *invocation of the jurisdiction of the agency*, we remain convinced that appellees cannot prevail under the doctrine of *Coleman*.

After all, we are admonished by Chief Justice Alexander in Railroad Commission v. Shell Oil Co., supra:

"This [substantial evidence] does not mean that a mere scintilla of evidence will suffice, nor does it mean that the court is bound to select the testimony of one side, with absolute blindness to that introduced by the other. After all, the court is to render justice in the case. The record is to be considered as a whole, and it is for the court to determine what constitutes substantial evidence." (Id.)

■ We are faced with a record which discloses beyond peradventure of doubt that the Stephensons did not propose to drill a well in 1964, having no money to put up therefor; and, under these circumstances would be authorized to invoke the presumption that where a state of things is proved to have existed at a particular time, its continuance is presumed until the contrary is shown. See the discussion in 1 McCormick & Ray, Texas Law of Evidence (2nd Ed.) § 81, p. 81.

■ In essence, appellees ask that we take the implied jurisdictional finding of the Commission as a final determination of the issue because of the presumption of validity inherent therein. But, this runs counter to the established rule of procedure as is shown by this quotation from Social Security Board v. Nierotko, 327 U.S. 358, 369, 66 S.Ct. 637, 643, 90 L.Ed. 718, 162 A.L.R. 1445 (1946):

"Administrative determinations must have a basis in law and must be within the granted authority. Administration when it interprets a statute so as to make it apply to particular circumstances acts as a delegate to the legislative power. * * * An agency may not finally decide the limits of its statutory power. That is a judicial function."

See also: Addison v. Holly Hill Fruit Products, 322 U.S. 607, 616, 64 S.Ct. 1215, 88 L.Ed. 1488, 153 A.L.R. 1007 (1943); 73 C.J.S. Public Administrative Bodies and Procedure § 66, p. 392 (black face text). And, the question may be raised at any time. Restatement, Judgments, § 11; 2 Am.Jur.2d, Administrative Law, § 726, p. 627; McGrath v. Kristensen, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173 (1950).

It was shown in our record that the drilling of a well upon the Stephensons' acreage would have been "foolhardy" and that the production therefrom would not even pay operating costs, much less return the investment. Against this positive testimony and our judicial appraisal of the *Normanna* and *Port Acres* decisions, supra, we are of the opinion that the appellants have discharged their burden of showing that the Stephensons did not invoke the jurisdiction of the Commission, and the order of the Commission being beyond its power to enter, is invalid.

The appellees have filed a joint post-submission brief discussing the applicability of the *Coleman Case* to that at the bar. In the conclusion, counsel say that "Appellants cannot avail themselves of this new theory [enunciated in *Coleman*] which was not plead, proved or considered in the trial court." No special exceptions were leveled at paragraph 14 of appellants' pleadings wherein allegations were made that the findings and order complained of "are not authorized by, and are contrary to, the terms and provisions of Article 6008c." In any event, the question which we consider in this overall appeal is one of invocation of the jurisdiction of the Commission

with the trial court's jurisdiction being derivative under the statute. The pleadings, albeit in the most general terms, tendered the issue which we now meet and appellees' argument is found to be without merit.

■ We have, of course, given consideration to a remand of the cause under the "interest of justice" concept referred to by our dissenting brother. Here, as in the leading case of Scott v. Liebman, 404 S.W.2d 288, 294 (Tex.Sup., 1966), a decision by the Supreme Court was handed down after the trial and before the submission of the cause; but, in our case the construction of the statute by the Supreme Court requires the result which we reach here. Under the *Port Acres* and *Normanna* decisions (see footnote 1, supra), and the record before us, the rationale of Scott v. Liebman is inapplicable. The result which we reach is dictated by the wording of the statute, as construed in *Coleman*. We can say too, just as Chief Justice Calvert said in *Coleman*:

"If we be mistaken in our conclusion, the Legislature will meet in regular session in January, 1971, and "can provide by legislation, without equivocation, for invocation of the provisions of 6008c by owners of other interests in the oil or gas in proration units in a common reservoir."

Additionally, this being a case governed by the substantial evidence rule of procedure, the "facts" can be reviewed by the Supreme Court on writ of error. City of San Antonio v. Texas Water Commission, 407 S.W.2d 752, 758 (Tex.Sup., 1966).

It follows from what has been said that since the Commission's jurisdiction was not invoked by the application of the Stephensons, the orders of forced pooling entered were not lawful orders under the provisions of *Article 6008c* within the "power" of the Commission. The judgment of the trial court denying appellants relief from such orders, was therefore, erroneous, and is here and now REVERSED and judgment RENDERED setting aside and holding for naught both of the orders involved herein.

Reversed and rendered.

STEPHENSON, Justice.

I respectfully dissent.

It is apparent from everything in the record before us that none of the parties to this suit anticipated the ruling in the Coleman case, supra. Appellants did not plead in the trial court, either directly or indirectly, that the Stephensons had not invoked the jurisdiction of the trial court by alleging and proving they had drilled or proposed to drill a well. A reading of the statement of facts indicates none of the parties were attempting to disprove or prove facts relating to that question.

Under the substantial evidence rule, it is clear that the burden of proof was upon appellant in attempting to set aside the order of the Railroad Commission, to prove the *absence* of substantial evidence to support such order. Board of Firemen's Relief & Retirement F. Tr. of Houston v. Marks, 150 Tex. 433, 242 S.W.2d 181 (1951); Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022 (1942).

The statement is made in the majority opinion that the testimony shows the drilling of a well upon the Stephensons' acreage would have been foolhardy and that the production therefrom would not even pay the operating cost, much less return the investment. That testimony is characterized as "positive", and the majority concludes the appellants have discharged their burden of showing the Stephensons did not invoke the jurisdiction of the Commission. Such evidence is nothing more than opinion testimony, which does not establish any material fact as a matter of law. Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345 (1948).

Appellants not only did not mention this matter in the trial court, in its initial brief admitted the Mineral Interest Pooling Act was applicable to the situation before the court and all of the points of error so reflect. It has long been the law in this State that parties are restricted in the appellate court to the theory on which the case was tried in the lower court. Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238 (1942); State v. J. M. Huber Corp., 145 Tex. 517, 199 S.W.2d 501 (1947).

For these reasons, I would affirm the judgment of the trial court. In any event, I would not render the case, but in the interest of justice, if there was reversible error in the trial court, I would remand the case, so the parties could plead and prove their case under the Coleman case, supra. Scott v. Liebman, 404 S.W.2d 288 (Tex.Sup., 1966).