Thomas M. COLEMAN, Appellant,

v.

RAILROAD COMMISSION of Texas, Appellee.

No. 7944.

Court of Civil Appeals of Texas.

Texarkana.

Aug. 26, 1969.

Rehearing Denied Sept. 30, 1969.

Dudley D. McCalla, Heath, Davis & McCalla, Austin, for appellant.

Linwood Shivers, Asst. Atty. Gen., Austin, Wm. E. McDonald, Lynch, Chappell, Allday & Hamilton, Houston, Rex H. White, Jr., Asst. Atty. Gen., Austin, for appellee.

CHADICK, Chief Justice.

This is a permanent injunction suit filed in a district court of Bowie County by Thomas M. Coleman as plaintiff. The Railroad Commission of Texas and its members, together with Hugh Ray Ashford, are named as defendants. The action is designed to test the validity of an order of the Railroad Commission pooling all unpooled mineral interests underlying the 80-acre proration unit previously formed by the Commission in the one well Simms (4946' Mooringsport) Field in Bowie County , Texas. The judgment of the trial court denying Coleman relief is reversed and the case remanded for new trial.

In March, 1955, Coleman leased his one-half undivided interest in the minerals of a 240 acre tract for oil, gas and mineral purposes to R. I. Boyd. Thereafter in July, 1962, Coleman divided the fee ownership of the land in the leased tract by deeding the Veterans' Land Board of the State of Texas 182.66 acres thereof (together with enough other land to form a 200 acre block) ; in turn, the Veterans' Land Board conveyed the 200 acres to Ashford. An assignee of the lease drilled a productive oil well on the leased land. The well site was on that part of the 240 acre leased tract retained by and belonging to Coleman. An order of the Railroad Commission forming an 80-acre proration unit made up of 35.25 surface acres belonging to Coleman and 44.75 surface acres belonging to Ashford was secured by the well operator.

After purchase, Ashford received delay rentals accruing under the Coleman to Boyd oil, gas and mineral lease on the 182.66 acres as rentals fell due prior to production. After production neither rentals nor a portion of production or its value were paid to Ashford. In February of 1966, Ashford petitioned the Railroad Commission of Texas to exercise the power vested in it under the terms of the Mineral Interest Pooling Act, Tex.Rev.Civ.Stat. art. 6008c (1968), and make an order pooling his royalty acreage in the production unit with that of Coleman. The application was granted, and Order No. 6–56,271 was issued by the Commission approving Ashford's offer to Coleman that the royalty derived from the 80-acre proration unit and theretofore paid to Coleman be apportioned 45% to Coleman and 55% to Ashford. The basis of the apportionment was the ratio of surface acreage each owed to total acreage in the proration unit, rounded off to the nearest percentage point.

The appellant has briefed the following points of error:

"*Point of Error One*. The trial court erred in holding that Article 6008c, V.A. C.S., is applicable and available to one in the position of defendant Ashford in a proceeding of the nature of that involved in this litigation.

"*Point of Error Two*. The trial court erred in failing to conclude that Article

6008c, V.A.C.S., does not authorize the granting of the relief afforded defendant Ashford by the Railroad Commission of Texas.

*"Point of Error Three.* The trial court erred in failing to hold that Article 6008c, as applied herein, violates Article I, Section 16 of the Constitution of the State of Texas.

*"Point of Error Four.* The trial court erred in failing to hold that Article 6008c, as applied herein violates Article I, Section 19 of the Constitution of the State of Texas.

*"Point of Error Five.* The trial court erred in failing to hold that Article 6008c, as applied herein, violates Section 10 of Article I and Section 1 of the 14th Amendment of the Constitution of the United States of America.

*"Point of Error Six.* The trial court erred in failing to hold that Article 6008c, as applied herein violates Article II, Section 1 and Article V, Section 1 of the Constitution of the State of Texas.

*"Point of Error Seven.* The trial court erred in failing and refusing to hold that the Railroad Commission of Texas never acquired jurisdiction of the subject matter of the administrative hearing involved herein because notice of such hearing was not given in the manner provided by Article 6008c, V.A.C.S.

*"Point of Error Eight.* The trial court erred in failing and refusing to hold that the order involved herein is void and of no force or effect because notice of the hearing involved herein was not given in the manner provided by Article 6008c, V.A.C.S.

*"Point of Error Nine.* The trial court erred in failing to find that notice of the administrative hearing involved herein was not given by the Railroad Commission of Texas to all owners of mineral interests in the unit involved in these proceedings.

*"Point of Error Ten.* The trial court erred in failing and refusing to hold that the statutory provisions pertaining to notice and the methods and procedures promulgated by the Railroad Commission of Texas, and allegedly followed by it, in giving notice of the administrative hearing involved herein, are unreasonable as a matter of law as to plaintiff (appellant) and denied him due process of law.

*"Point of Error Eleven.* The trial court erred in denying plaintiff's demand for a jury and in holding that this case must be tried without a jury under the substantial evidence rule.

*"Point of Error Twelve.* The trial court erred in finding that plaintiff was given notice of the hearing involved herein by the Railroad Commission of Texas as required by Article 6008c, V.A.C.S.

*"Point of Error Thirteen.* The trial court erred in failing to find that plaintiff did not receive notice from the Railroad Commission of Texas of the hearing involved herein.

*"Point of Error Fourteen.* The trial court erred in failing to find that plaintiff had no actual notice of the hearing involved herein, prior to the date of said hearing.

*"Point of Error Fifteen.* The trial court erred in failing to find that the offer to pool made by defendant Ashford to plaintiff was not on such terms and conditions as were fair and reasonable and which would afford the owners of each interest in the unit to receive his fair share.

*"Point of Error Sixteen.* The trial court erred in holding that Railroad Commission Special Order No. 6–56,271, dated August 29, 1966, is a lawful and valid order and is supported by substantial evidence.

*"Point of Error Seventeen.* The trial court erred in failing and refusing to conclude that the finding of the Railroad

Commission of Texas that the offer to pool made by defendant Ashford to plaintiff was on such terms and conditions as were fair and reasonable and which would afford the owners of each interest in the unit the opportunity to receive his fair share is not reasonably supported by substantial evidence.

*"Point of Error Eighteen.* The trial court erred in rendering judgment for defendants herein and in failing and refusing to render judgment for plaintiff."

Ashford's application to the Railroad Commission presented that agency with a subdivision-after-lease situation in which the royalty interests in the subdivisions of the proration unit are separately owned. Since Japhet v. McRae, 276 S.W. 669 (Tex. Com.App.1925, judg. adopted), in similar situations the royalty owner in the subdivision where the well was located received the entire royalty and none was apportioned to the owner of the undrilled subdivision of the proration unit. University of Texas: Smith, The Texas Compulsory Pooling Act. (Pt 1), Texas Law Review 1003 (1965) and University of Texas, Hardwicke and Woodard, Fair Share and the Small Tract in Texas, Texas L.Rev. 75 (1962). In this instance, the Commission's order effected a compulsory pooling and apportionment of the Coleman and Ashford interests and represents a radical departure from the non-apportionment rule applied by the courts in subdivision-after-lease cases. The Commission based its authority to issue the questioned order squarely upon the provisions of the Mineral Interest Pooling Act.

The concession in Ashford's and the Railroad Commission's brief that the order was made to protect correlative rights removes as factors in the case the prevention of waste and avoidance of unnecessary wells. The narrowed legal issue here is, as the Commission puts it, "Whether a royalty interest owner is an *owner* within the meaning of § 2(a) Art. 6008c, V.A.C.S., and thereby entitled to invoke the jurisdiction of the Railroad Commission to effect pool-

ing of mineral interest embraced within an existing proration unit"; or, as Coleman would have it, "May a royalty owner, such as defendant Ashford, apply for and obtain a compulsory pooling order under the Act." This is the first time the question has reached an appellate court.

The first sentence of Sec. 2(a) of the Act, stripped of some immaterial verbiage, contains the language of the Act that must be considered in deciding the issue mentioned, to-wit:

"When two or more separately owned tracts of land are embraced within a common reservoir of oil or gas for which the Railroad Commission * * * has established * * * the size and shape of proration units, * * * and where there are separately owned interests in oil or gas embraced within an existing or proposed proration unit * * * and the owners have not agreed to pool their interests, and where one or more of the owners have drilled or propose to drill a well on the proration unit to the common reservoir, the Commission, to avoid the drilling of unnecessary wells, or to protect correlative rights, or to prevent waste, shall on the application to the Commission of any such owner, establish a unit and pool all of the interests therein within * * * such proration unit * * *."

This sentence refers to three categories of owners of interest in land as follows:

1. Owners of two or more separately owned tracts of land embraced within a common reservoir for which the Railroad Commission of Texas has established the size and shape of proration units.

2. Owners of separately owned interest in oil or gas embraced within an existing or proposed proration unit in the common reservoir.

3. Owners who have drilled, or propose to drill, a well on a proration unit to the common reservoir.

Together the three classifications embody all estates or interest in land recognizable in law, and it may be observed that the nature of a single interest might place an owner in more than one category. The intention and purpose of the sentence is to empower the Railroad Commission to pool all interest in a proration unit in order to avoid drilling of unnecessary wells, or to protect correlative rights, or to prevent waste, and as a precondition to the Railroad Commission exercising the power conferred a third category owner must have drilled a well on a proration unit, or proposed to drill, and the owners in one or more of the other classifications must have failed to voluntarily agree to pool their separate interest in the unit.[1] These preconditions, along with those requiring application and notice, pertain to jurisdiction. Other provisions of the Act require the Commission to determine on the merits whether or not an applicant's voluntarily pooling offer to other owners is fair and reasonable, etc., along with other matters specifically committed to the Commission for determination. No obstacle to the Act's orderly operation is found in its language.

■ The record in this appeal shows that the shape and size of a proration unit had been established by the Railroad Commission Order dated January 13, 1966, a standard proration unit formed and an oil well drilled thereon by the assignee of the oil and gas lease. Despite possible mistake or inadequacy in the general conclusion expressed in the preceding paragraph, under the circumstances shown, Ashford, as the owner of a part of the land embraced in the proration unit, and a royalty owner by the terms of the lease and the deed vesting title to the land in him, was authorized by the pooling statute to apply to the Railroad Commission to pool his royalty interest with that of Coleman, and to receive a fair share of the royalty oil. In this particular case it is obvious the effect of the statute is to prevent application of the nonapportionment rule of Japhet v. McRae, none the less, the duty of this court is plain. In Simmons v. Arnim, 110 Tex. 309, 220 S.W. 66 (1920), it was said, and lately repeated in Railroad Commission of Texas v. Miller, 434 S.W. 2d 670 (Tex.1968) that:

> " 'Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere. They are not the lawmaking body. They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.' "

The result reached could be asserted with greater confidence if the record contained more conclusive evidence that the Railroad Commission had approved the acreage in the well's proration unit. The evidence tending to support a conclusion that it had done so is found in the circumstance that the pooling order described a specific tract of land and in an excerpt, which was admitted at the trial without objection, from the Minutes of the Hearing on the Ash-

---

1. In an admirable dissertation upon the Mineral Interest Pooling Act, Prof. Ernest E. Smith delves into the Act's nature and concluded its provisions are ambiguous. In brief, he advocates, or at least stoutly recommends, a Procrustean solution of the ambiguity, so that an owner of an interest such as that held by Ashford may have his royalty interest in the proration unit pooled with the similar interest owned by Coleman, though he candidly and fairly acknowledges that: "[B]y the most natural reading of the Act * * * it is difficult to see how anyone other than a person with a mineral fee or working interest would be in a position to comply with the Act." University of Texas: Smith, The Texas Compulsory Pooling Act (pt 1), 43 Texas L.Rev. 1003 (1965).

ford pooling application. In the Minutes it is said, "Let the record show that the field now has rules and standard proration units." There is a distinction between proration units established by field rules, where only the size and shape are specified, and a standard proration unit that describes the land within the well unit. The field rules promulgated by the Commission in this instance merely state that all proration units must contain 80 acres, with the two farthermost points in any unit not in excess of 3200′ from each other, with provisions for tolerances and exceptions. A standard proration unit for allowable purposes describes the acreage assigned to the particular well. Since the judgment will be reversed for other reasons, this subject will not be pursued further.

Appellant Coleman's brief says that if " * * * the Court should hold that the Legislature intended to make the Act available to one in Mr. Ashford's position and thus applicable in this case, Appellant asserts that the Act (so construed) * * * violates Article 1, Section 16 of the Constitution of the State of Texas, and Article 1, Section 10 of the Constitution of the United States of America." The Commission's brief answers Coleman's argument with little more than the statement that it is "entirely without merit", and cites Deep South Oil Co. of Tex. v. Texas Gas Corp., 328 S.W.2d 897 (Tex.Civ.App. Beaumont, 1959, error ref'd, n. r. e.) ; Butler v. Jenkins Oil Corp., 128 Tex. 356, 97 S.W.2d 466 (Tex.Com.App.1936) ; Midas Oil Company v. Whitaker, 123 S.W.2d 495 (Tex.Civ.App. Eastland, 1938, no writ).

The basic oil, gas and mineral lease of Coleman to Boyd was effected in March, 1955, thereafter in July, 1962, Coleman conveyed 182.66 acres of the leased land to the Veterans' Land Board of the State of Texas, and on a subsequent date not shown in the record the Board contracted to or did convey such land to Ashford. The well was completed and began production in February, 1965. The Mineral Interest Pooling Act became effective August 30, 1965. The

Railroad Commission promulgated temporary field rules for the field area on January 13, 1966, in which the size and shape of proration units were established. The Commission's Special Order No. 6–56,271, the subject of this suit, was made and issued the 29th day of August, 1966. The temporary field rules were made permanent on January 3, 1967. From these dates it appears the contract obligating the lessee to pay Coleman royalty was made better than ten years before the Mineral Interest Pooling Act became a state law, and royalties under the terms of the lease contract accrued and became payable to Coleman approximately seven months prior to the Act's effective date. The nonapportionment rule of Japhet v. McRae, was applicable in effectuating the contracts of Coleman and Ashford when production commenced.

A general rule of law, such as the nonapportionment rule of Japhet v. McRae, does not become a part of a contract obligation unless by express terms or necessary intendment it is imported into the contract. It is said in Chicago & A. R. Ry. Co. v. Tranbarger, 238 U.S. 67, 35 S.Ct. 678, 59 L.Ed. 1204, that " * * * no person has a vested right in any general law or policy of legislation entitling him to insist that it will remain unchanged for his benefit. * * * so an immunity from the change of the general rules of the law will not ordinarily be implied as an expressed term of an express contract." Since the Japhet v. McRae nonapportionment rule was not expressly or by implication a part of a contract binding Coleman and Ashford, the Act's impact on the rule did not impair an obligation thereof.

In the trial court a request for a jury was made by Coleman and a fee tendered. The judgment in the trial court recites : " * * * the court having considered plaintiff's request for a jury determined that this type of case should be tried under the substantial evidence rule and denied plaintiff's request for a jury." In the findings of fact and conclusions of law the

trial judge found: "3. That plaintiff Coleman was given notice as required by the Act by the defendant Commission of the hearing to determine pooling application of defendant Ashford." In the course of the trial notice of the hearing was a hotly disputed fact issue. Coleman was entitled to a jury trial on this fact issue for reasons to be discussed briefly.

The trial court was under a duty to exercise its independent judgment and determine from a preponderance of the evidence ultimate fact issues relevant to jurisdiction. It is said in 73 C.J.S. Public Administrative Bodies and Procedure § 227:

"The determination of an administrative body with respect to its jurisdiction is always subject to judicial review. The court is not bound or concluded by the administrative body's findings or recitals as to jurisdictional facts; it has the power and duty of examining and weighing all the evidence concerning such facts and making therefrom its own independent findings in accordance with its own view of the preponderance of the evidence; and the general rules, * * * limiting the review of ordinary questions of fact do not, as to a jurisdictional fact, prevent the court from reviewing the action of a commission and finding the fact to be otherwise than the commission found it, since such rules are inapplicable to jurisdictional facts. * * *"

A similar statement of the law is found in 2 Am.Juris.2d § 692. Though no Texas case directly in point has been found, no condition is shown suggesting the desirability of a different rule. Ashford's and the Commission's brief declines to treat differently or make a distinction between jurisdictional facts and the administrative facts the Railroad Commission might be required to determine in the execution of its administrative function. These appellees cite Tex.Rev.Civ.Stat.Ann. art. 6049c, § 8, and Jones v. Marsh, 148 Tex. 362, 224 S.W. 2d 198 (1949) as authority for the proposition that the jurisdictional facts in this case are to be determined under the substantial evidence rule. Respecting appeals to the courts in cases governed thereby the cited statute provides that, " * * * the burden of proof shall be upon the party complaining of such laws, rule, regulation or order; and such laws, rule, regulation or order so complained of shall be deemed prima facie valid", and appellees' argument appears to be that this language empowers the Railroad Commission not only to determine the question of its jurisdiction, but that once it makes a determination supported by substantial evidence, its orders may not be disturbed by the courts. The cited case concerned the denial of an application to sell beer at retail, and as no jurisdictional fact question was at issue the pronouncements of the opinion are not necessarily determinative of the legal question here. Reverting to the mentioned statute, the language quoted does not and can not bar the courts from making an independent determination of jurisdictional fact issues from a preponderance of the evidence. In short, jurisdictional fact issues are judicial in nature and the courts must determine them by a preponderance of the evidence. See Key Western Life Insurance Company v. State Board of Insurance, 163 Tex. 11, 350 S.W.2d 839 (1961). In testing the Railroad Commission's action in this appeal the trial court should have determined controverted jurisdictional fact issues by jury trial and controverted administrative fact issues in the manner appropriate to them. There is no perceptible impediment to such procedure. The case must be reversed for a proper determination of the jurisdictional issues.

Whether the offer to pool made by Ashford was fair and reasonable and would afford the owner of each interest in the unit an opportunity to receive his fair share of production is the subject of the appellant's fifteenth and seventeenth point of error. It was mentioned earlier that the apportionment of production between Ashford and Coleman was based on the acreage each owned in the unit. Because the case

is to be reversed, it is not necessary to determine whether or not such an apportionment is supported by substantial evidence. However, under the circumstances, it should be pointed out that determining whether or not an offer meets the statutory test of being fair and reasonable, etc., would ordinarily require consideration of more than the acreage of the owners. To illustrate without attempting to comprehensively determine the scope of investigation required by the statute, consideration should be given to above ground as well as reservoir conditions. It is doubtful that an order could be fair and reasonable that imposes on one owner of land all detriment and damage that production of oil might cause to his land or its surface, while another owner escaped a proportion of such burden.

The original opinion herein is withdrawn and this substituted for it. Originally and again on rehearing all points of error have been carefully considered. The motions for rehearing are overruled, and as originally ordered, the judgment of the trial court is reversed and the case is remanded for a new trial in which the jurisdictional facts may be properly decided.