John Lee CARSON, et al., Petitioners,

v.

The RAILROAD COMMISSION OF TEXAS, et al., Respondents.

No. C–2622.

Supreme Court of Texas.

April 18, 1984.

Rehearing Denied June 6, 1984.

Brite, Drought, Bobbitt & Halter, Robert Lee Bobbitt, Jr., James L. Drought and Calhoun Bobbitt, San Antonio, for petitioners.

Jim Mattox, Atty. Gen., Jose Manuel Rangel, Asst. Atty. Gen., Scott, Douglass & Keeton, Frank Douglass and H. Phillip Whitworth, Jr., Austin, for respondents.

WALLACE, Justice.

This is an appeal from a judgment of the trial court upholding an order of the Texas Railroad Commission favorable to BTA Oil Producers (BTA). The court of appeals in an unpublished opinion affirmed the judgment of the trial court. We reverse the judgments of the court of appeals and the trial court and remand the cause to the Railroad Commission with instructions to dismiss BTA's application for want of jurisdiction.

Petitioners John Lee Carson, Donald R. Broadland, David C. Carson, Jeanne L. Carson, Betty Jo Rife and Stanford G. Rife (Carson) are owners of ¹³/₆₄ of a ⅛ royalty interest in several contiguous tracts subject to a number of oil and gas leases. Two of these tracts are subject to a forced pooling order of the Railroad Commission. Of the 97 interest owners in the pooled unit, petitioners are the only ones who refused to ratify a voluntary pooling agreement proposed by BTA, the working interest owner, and a respondent herein.

Carson's lease, covering tracts 5 and 7 of the pooled unit, was executed in 1926 and retained a ⅛ royalty. This lease gave the lessee *no authority to pool. Some of the* leases on the other tracts, executed at a later date, retained a ⅙ royalty and gave the lessee pooling authority. BTA commenced drilling a well on Tract 7 on January 13, 1980, and completed it as a producer on July 3, 1980. Prior to this time the Commission had approved a proration unit of 642.39 acres. Sales commenced from the well in September of 1980. The well is located on one of the tracts in which Carson owns a royalty interest.

In November of 1980, some four months after the producing well was completed, and some two months after sales from the well commenced, BTA made a written proposal to all royalty interest owners in the 642.39 proration unit to share in production from the well on an acreage basis. This offer would have reduced Carson's interest in the gross production from the subject well by approximately two-thirds, while allowing owners of royalty interests who would not otherwise participate in production from the well (owners of royalty interests in non-drillsite tracts) to share in these proceeds. Carson was the only royalty owner who refused to ratify the voluntary pooling unit.

■ The issue in this case is whether the offer made by BTA to Carson was fair and reasonable. If so, the Railroad Commission was correct in ordering the unit to be force-pooled. If not, the Railroad Commission did not have jurisdiction of BTA's application for forced pooling and should have dismissed the application. This is not a substantial evidence review as stated by the court of appeals; it is a jurisdictional review. TEX.NAT.RES.CODE ANN. § 102.013(b) (MIPA) states:

The Commission *shall* dismiss the application if it finds that a fair and reasonable offer to pool voluntarily has not been made by the applicant. (Emphasis added).

BTA contends that § 102.013(c) of MIPA controls in this case and that it made an offer in compliance with that section, which states:

An offer by an owner of a royalty or any other interest in oil or gas within an existing proration unit to share on the same yardstick basis as the other owners within the existing proration unit are then sharing shall be considered a fair and reasonable offer.

Carson contends that § 102.013(c) applies only to an owner who demands that he be permitted to "muscle in" to an existing unit, and that it does not apply to royalty owners in Carson's position.

In 1969, prior to the enactment of § 102.-013(c) of the MIPA, the Texarkana court of civil appeals addressed the question of what constituted a fair and reasonable offer. *Coleman v. Railroad Commission*, 445 S.W.2d 790 (Tex.Civ.App.—Texarkana 1969), *modified* 460 S.W.2d 404 (Tex.1970). That case involved a "muscle in" situation wherein the court stated:

> However, under the circumstances, it should be pointed out that determining whether or not an offer meets the statutory test of being fair and reasonable, etc., would ordinarily require consideration of more than the acreage of the owners. *Id.*, 445 S.W.2d at 797.

■ This court, in modifying the judgment of the court of appeals in *Coleman*, held that only an owner who had drilled or proposed to drill could invoke the Commission's authority to order involuntary pooling. 460 S.W.2d at 408. This court further stated in its opinion:

> If we be mistaken in our conclusion, the Legislature will meet in regular session in January of 1971, and can provide by legislation, without equivocation, for implication of the provisions of 6008c by owners of other interests in oil and gas in proration units in a common reservoir. *Id.*

The Legislature, in 1971, amended the MIPA to provide that *all* mineral interest owners within an existing proration unit could invoke the MIPA, thus providing for small acreage owners to "muscle in" to an existing unit. BTA contends that the Legislature also intended by enacting § 102.-013(c) that the only criteria for a fair and reasonable offer was that it offer each owner an opportunity to share on the same yardstick basis as other participants in the unit. We disagree.

Section 102.013(a) requires that the applicant shall "set forth in detail the nature of the voluntary pooling offers made ...." This requirement was not altered in 1971 when subsection (c) was added. If the

Legislature had intended that an offer to share on an acreage basis was all that was required, it would have amended subsection (a) to reflect that intent.

It is clear from the history of the bill that the Legislature intended no such result. An analysis of the bill by the House Committee on Oil, Gas & Mining[1] states that the purpose of the bill is to "more closely define who is an 'interested owner' thereby authorized to invoke [the Act] by applying to the Railroad Commission for forced pooling."[2] While the bill makes it clear that "... an offer to join a proration unit on the same prorata basis as those already participating shall be deemed a fair and reasonable offer ...," the Committee goes on to note that "[i]n this and other matters, the Mineral Interest Pooling Act requires a party to make a good faith effort to reach voluntary agreement before application to the Railroad Commission for consideration."[3]

■ Considering that the Legislature added subsection (c) in response to *Coleman*, wherein the Supreme Court had interpreted the MIPA to limit the availability of involuntary pooling orders to applicants who had drilled or proposed to drill; and considering further that *Coleman* was a "muscle in" situation, we find that the intent of the Legislature in adding subsection (c) was to permit small acreage owners to "muscle in" to a larger established proration unit, and to provide that the only offer required from the small acreage owner in order to "muscle in" is to offer to share in the royalties on an acreage basis.

■ Having determined that an offer, made by an operator who has drilled or proposes to drill, to a royalty interest owner is not necessarily fair and reasonable just because it would allow the royalty owner to share on an acreage basis, we must turn to the offer by BTA to determine if it was fair and reasonable.

1. HOUSE COMM. ON OIL, GAS & MINING, BILL ANALYSIS, Tex.S.B. 359, 62d Leg. (1971).

2. Id.

3. Id.

The offer was made in November of 1980 after BTA had completed a producing well on the tract in which Carson owns a royalty interest. The letter to Carson containing the offer stated that Carson was required to sign the ratification agreement in order to share in the proceeds of the well and that "we cannot issue a division order to you until we have received your executed ratification." BTA placed this condition on the offer even though there was no question concerning Carson's title to the royalty interest and no impediment to the issuance of division orders.

BTA acknowledged in this letter that Carson's lease did not contain authorization for the lessee to pool as did other leases in the unit, but it noted that it expected the Railroad Commission to grant it such authority. Carson responded to BTA's letter by suggesting that BTA compensate him for reducing his interest in the well proceeds by increasing the ⅛ royalty interest under the lease to reflect prevailing royalties under modern leases, but BTA refused to negotiate, stating that it did not feel obligated to do so.

In this particular case, the time at which the offer was made is a factor to be considered in determining if it was fair and reasonable. BTA had complete discretion as to when it would make the offer. Had an offer to share on an acreage basis been made before it was determined where the well was to be drilled, there would have been some incentive for Carson to join the voluntary pooling unit: it would have assured him that he would have the right to receive royalties from the well wherever it was drilled. After the producing well was completed on Carson's tract, he was entitled to his proportionate share of ⅛ royalty from the *entire* production of the well, unless he either agreed to join the voluntary pooling unit or, after refusing to accept a fair and reasonable offer, he was properly force-pooled by order of the Railroad Commission.

It would not be logical, or even rational to interpret MIPA § 102.013(c) to allow an operator in BTA's position to drill and complete a producing well, and then to obtain a forced pooling order which would substantially reduce its royalty obligation to interest owners, based only on an initial demand that the royalty owners join in a proposed "voluntary" unit and a subsequent refusal to negotiate. As noted by Ernest Smith in a leading article on the MIPA, *The Texas Compulsory Pooling Act*, 44 Tex.L.Rev. 387 (1966):

> [i]n the absence of a finding of reasonable offers a dismissal rather than a compulsory pooling may be more in keeping with the spirit of the act. As has been pointed in the previous installment of this article, the Texas statute differs from similar statutes of other states by its emphasis on voluntary pooling.... *If a bona fide attempt to reach a contractual agreement is not considered a condition precedent to invoking the compulsory process, much of the deliberately unique language in the Texas statute is rendered meaningless. Id.* at 393 (emphasis added).

We do not attempt to define a fair and reasonable offer, or to determine the various elements thereof. We do agree that the offer must be one which takes into consideration those relevant facts, existing at the time of the offer, which would be considered important by a reasonable person in entering into a voluntary agreement concerning oil and gas properties.

We hold as a matter of law that the proposal made by BTA to Carson in November of 1980 was not a "fair and reasonable offer."

The judgments of the court of appeals and the trial court are reversed and we remand the cause to the Railroad Commission with instructions to dismiss BTA's application for want of jurisdiction.