**RAILROAD COMMISSION OF TEXAS, et al., Appellants,**

**v.**

**Joe BROUSSARD II, et al., Appellees.**

**No. 3–87–230–CV.**

Court of Appeals of Texas, Austin.

Aug. 10, 1988.

Rehearing Denied Sept. 14, 1988.

**952**

John W. Camp, Scott, Douglass & Luton, Jim Mattox, Atty. Gen., Diane Weidert Morris, Asst. Atty. Gen., Austin, for appellants.

Ivan D. Hafley, Reynolds, Shannon, Miller, Blinn, White & Cook, Lloyd Broussard, Broussard & Broussard, Austin, for appellees.

Before POWERS, BRADY and CARROLL, JJ.

CARROLL, Justice.

This case involves forced pooling under the Mineral Interest Pooling Act, Tex.Nat. Res.Code Ann. § 102.001 *et seq.* (1978) (MIPA). Appellees had offered to pool their oil interests with an adjoining landowner's and had been refused. They then applied to the Railroad Commission for a forced pooling order, but the Commission concluded that their voluntary offer was not "fair and reasonable" and dismissed the application. On appeal, the district court reversed the Commission's order on the basis that it was arbitrary and capricious. We will reverse the district court judgment.

## BACKGROUND

### I. *Legal Framework*

MIPA provides that the Commission may order mineral owners whose land shares a common reservoir to pool their interests to prevent unnecessary drilling, protect correlative rights, or prevent waste. MIPA § 102.011. *See, e.g., Broussard v. Texaco, Inc.*, 479 S.W.2d 270 (Tex.1972).

■ One prerequisite for forced pooling is that the applicant for the order must have made a "fair and reasonable" offer for voluntary pooling to the owner of the other mineral interests. MIPA does not expressly define this phrase. However, what is fair and reasonable must be adjudged from the standpoint of the offeree. *Windsor Gas Corp. v. Railroad Commission of Texas*, 529 S.W.2d 834 (Tex.Civ. App.1975, writ dism'd). More specifically, the offer "must be one which takes into account those relevant *facts, existing at the time of the offer,* which would be considered important by a reasonable person in entering into a voluntary agreement concerning oil and gas properties." *Carson v. Railroad Commission*, 669 S.W.2d 315, 318 (Tex.1984) (emphasis added). If the Commission finds that the applicant has not made such a fair and reasonable offer, it must dismiss the application for compulsory pooling. MIPA § 102.013.

### II. *Procedural History*

In March 1985, appellees asked the Commission for an order to pool their oil and gas interests with those belonging to the predecessors in interest of appellant Moore McCormack, Inc. After an extended hearing, the Commission determined that appellees' offer was not fair and reasonable, and on that basis dismissed appellees' application.

Appellees appealed this determination to the district court pursuant to MIPA § 102.111. The court decided that the Commission's determination (*i.e.,* that Broussard's offer was not fair and reasonable) was arbitrary and capricious and reversed the Commission's final order. It is from that trial court reversal that the Commission now appeals.

## DISCUSSION

### I. *Scope of Review*

Appellants urge us to employ a "substantial evidence" review of the Commission's

decision. But the Supreme Court has held that the question whether an offer to pool is fair and reasonable "is not a substantial evidence review ... it is a jurisdictional review." *Carson, supra,* at 316. We will first analyze the appeal under the "jurisdictional review" standard mentioned in *Carson.* However, for reasons to be discussed shortly, we will also employ a substantial evidence review. Under either standard, however, the trial court's holding was erroneous.[1]

## II. *Jurisdictional Review*

### A. The Commission's findings.

The Commission was charged with deciding whether appellees' offer to pool was fair and reasonable. MIPA § 102.013. The determination of whether a pooling offer is fair and reasonable has been held to amount to a conclusion of law. *Buttes Resources v. Railroad Commission,* 732 S.W.2d 675 (Tex.App.1987, writ ref'd n.r.e.).

It is undisputed that, for the appellees' offer to be determined to be fair and reasonable, one of the wells belonging to appellants' predecessors in interest (the "Pru-

dential wells") must have been draining gas from under appellees' property. In its final order, the Commission explained why it found appellees' offer was not fair and reasonable:

> The critical factor to be considered as regards Broussard's offer being fair and reasonable from the protestants' view point is that their well is not draining the Broussard tract at present. . . .

> Broussard proposed to pool its tract and participate in production from the White C–4 well though none of the hydrocarbons being produced by that well are being drained from the Broussard tract *at this time.* The examiners believe this does not satisfy the requirements of the Mineral Interest Pooling Act.

Clearly, then, the Commission based its decision primarily on the fact that, although recovery operations might cause drainage to occur sometime in the future, no gas was being drained from productive acreage in the Broussard tract *at the time* the offer was made. The Commission determined that, without current drainage occurring, forced pooling would not accom-

---

**1.** In *Carson,* the Supreme Court stated: "This is not a substantial evidence review as stated by the court of appeals; it is a jurisdictional review." The statement refers to the instruction in Tex.Nat.Res.Code Ann. § 102.013(b), which requires *dismissal* of the application if the Commission fails to find the voluntary offer was fair and reasonable. We do not know what the court of appeals stated in *Carson,* in reference to substantial evidence, for that court's opinion was evidently not published. We do not believe, however, that the Supreme Court intended by its statement that the Commission decision could *never* have a factual basis, necessitating judicial review under the substantial evidence rule.

In the first place, the *Carson* statement must be understood in context. The *holding* in the case—that the offer was *not* fair and reasonable —was made "as a matter of law." 669 S.W.2d at 318. This refers to the Court's interpretation of MIPA § 102.013(c), stating that offers are fair and reasonable as a matter of law if they propose sharing "on the same yardstick basis" as that enjoyed by the other owners in the proration unit. 669 S.W.2d at 316. Thus, the Supreme Court rejected as a matter of law an interpretation "that an offer to share on an acreage basis was *all* that was required. . . ." 669 S.W.2d at 317 (emphasis supplied). Instead, what was a "fair and reasonable offer"

required a consideration of "those *relevant facts,* existing at the time of the offer, which would be considered important by a *reasonable* person in entering into a voluntary agreement. . . ." 669 S.W.2d at 318. While the Court refused "to define a fair and reasonable offer, or to determine the various elements thereof," 669 S.W.2d at 318, it *held* as a *matter of law* that the Commission could not consider *only* the "same yardstick basis" mandated by MIPA § 102.013(c). Instead, the *Carson* opinion specifically and explicitly states that the "relevant facts" shall be considered. This then, in the strongest possible terms, implies two other propositions: (1) the Commission must hear evidence and make findings of fact about what, in truth, the relevant facts are; and (2) judicial review of those fact findings must be made under the "substantial evidence" rule, that being the only permissible scope of review under the pertinent statutes and constitutional provisions applicable to a court's power to review the actions of agencies created by the Legislature. To construe the *Carson* statement as precluding judicial review under the "substantial evidence" rule, in *all* cases not only stands *Carson* on its head, but it also violates the applicable statutes and earlier decisions of the Court itself. If that construction is valid, MIPA § 102.013(b) can never permit a factual basis for the conclusion that an offer was not "fair and reasonable."

plish the MIPA's objective of preventing drainage. Instead, it would give appellees a share of the production from Moore McCormack's wells even though none of appellees' gas contributed to that production.

### B. The district court's conclusion.

The district court found the Commission's conclusion—that the offer was not fair and reasonable—to be arbitrary and capricious (presumably applying the Texas Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat.Ann. art. 6252-13a, § 19 (e) (Supp.1988)). The court therefore reversed the Commission's decision to dismiss the application, reasoning that it was arbitrary and capricious for the Commission to rely on its 1985 finding of no drainage where, in a previous final order in 1983, the Commission made a contrary finding in another proceeding involving the same reservoir.[2]

### C. Our review of the district court judgment.

We believe the district court erred in holding that the Commission abused its discretion in relying upon the 1985 findings. Since it is undisputed that the law gives the Commission discretion to find facts and apply the law in its administration of MIPA, including the determination of what is a fair and reasonable offer, only one question is in dispute here: did the agency erroneously exercise the discretion committed to it by law?

■ In this case, that reduces to whether the Commission reasonably could apply the new findings. We believe it could. The statute under which the agency acted requires a determination of whether the offer was fair and reasonable in light of "those relevant facts" existing at the time the offer was made. *Carson, supra.* Obviously, the 1985 findings are closer in time

to the making of the offer than the older findings. The Commission is permitted to reconsider previous decisions based on such new evidence. *Magnolia Petroleum Co. v. New Process Production Co.*, 129 Tex. 617, 104 S.W.2d 1106 (1937); *Texas & N.O.R. Co. v. Railroad Commission*, 145 Tex. 541, 200 S.W.2d 626 (1947).

Since the Commission was entitled to examine the application in light of new evidence adduced nearer the time the offer was made, and since the conclusions drawn from that new evidence are not attacked in this appeal, we hold that, under a jurisdictional review, the Commission properly determined that appellees' offer was not fair and reasonable and properly dismissed the complaint.

■ Appellees are also mistaken in contending that the Commission found their offer unfair and unreasonable because it was based on the 1983 findings. The issue is not whether appellees had notice that the old findings were inadequate. The issue is whether the offer was fair and reasonable from the offeree's point of view *at the time it was made.* If the 1985 findings had shown results similar to the 1983 findings, appellees' use of the earlier findings would not have been unfair or unreasonable. But the determinative fact is quite simple: the 1985 findings showed that the 1983 findings were no longer accurate. Under those circumstances, it was not arbitrary and capricious for the Commission to use the most current and accurate findings available. Those findings showed that no productive Broussard acreage was being drained at the time the offer to pool was made. Hence, from the offerees' point of view, the offer to pool was not fair and reasonable.

### III. *Substantial Evidence Review.*

#### A. The need for substantial evidence review.

The preceding analysis focuses entirely upon the reasonableness of the Commis-

---

**2.** The trial court's Conclusion of Law # 2 reads: "Since by final order dated March 28, 1983 ... Defendant found the subject gas field to be a common reservoir and determined the precise amount of productive net acre-feet under all tracts lying within the boundaries of said com-

mon reservoir, plaintiffs' voluntary pooling offer in Oil and Gas Docket No. 3-85,139 was fair and reasonable."
Of course, the determination that a common reservoir existed is not dispositive of the question whether the offer was fair and reasonable.

sion's decision to rely on the 1985 findings. Based on the holding in *Carson*, we have not considered whether those findings support the Commission's conclusion of law, for that would constitute a "substantial evidence" form of review, which *Carson* seemingly prohibits.

However, for *Carson's* statement—that "substantial evidence" review is not applicable—to be true, MIPA § 102.013(b) could never permit a factual basis for the conclusion that an offer was not "fair and reasonable." But whether an offer is fair and reasonable is plainly a mixed question of law and fact—a comparison of factual inferences against the legal norm and standard of "fair and reasonable." Here, whether the dismissal was "fair and reasonable" depends upon the geological fact of whether the applicant's mineral estate is being drained. This geological fact must be shown from the evidence adduced on that point in the agency proceeding.

Given that factual grounds may exist for determining that an order is not "fair and reasonable," the Commission is vested by law with the power to make the *first* determination in that regard, based on evidence adduced in the agency. MIPA §§ 102.011, 102.013, 102.016, 102.017. Not only is the determination committed by statute to the Commission's initial determination, the same statutory scheme provides that a court's review of that determination shall be "in a manner other than by trial de novo," MIPA § 102.111, a scope of review that includes "substantial evidence" review as a matter of law, as stated in APTRA § 19(e). Indeed, the reviewing court may not constitutionally engage in any *other* scope of review of the Commission's factual determinations, such as a "preponderance of the evidence" review. *See Chemical Bank & Trust Co. v. Falkner*, 369 S.W.2d 427, 432–3 (Tex.1963); *Southern Canal Co. v. State Board of Water Engineers*, 159 Tex. 227, 318 S.W.2d 619 (1958); *Davis v. City of Lubbock, supra; Scott v. State Board of Medical Examiners*, 384 S.W.2d 686 (Tex.1964); *Gerst v. Nixon*, 411 S.W.2d 350 (Tex.1967).

In sum, the present appeal cannot be decided without considering the Commission's determination regarding drainage. The order of dismissal is presumptively valid, which means that the 1985 finding of no drainage is valid as well, for it is the basis upon which the order rests. Only the Commission could make that factual determination. The only scope of review of that question, allowed us (by all authorities except *Carson*) as a reviewing court, is whether it is reasonable in light of the evidence adduced on the point. In other words, we must decide whether there was substantial evidence to support the Commission's decision. We now examine that evidence.

### B. The evidence

If the Prudential wells are draining productive land belonging to appellees, that would militate in favor of forced pooling. The 1983 order showed that by 1985 the Broussards' productive acreage would become subject to drainage by Prudential wells while the 1985 order, by contrast, showed that those lands that *were* productive (Zones 2 & 4) were not subject to drainage. Hence, appellees (and the district court) believe the Commission's reliance on the 1985 findings (and disregard of the contrary 1983 findings) to be arbitrary and capricious.

Appellees also argue that, even if, as determined in the 1985 order, the zones being drained were in fact nonproductive, they are not producing because they had been drained by Moore McCormack wells in the period between the 1983 order and the 1985 order. Appellees note that the 1983 order shows productive acreage in zones 5 and 6, while the 1985 order shows: (1) that those zones are being drained by the Prudential wells, and (2) the acreage being drained was not then productive (or there was less productive acreage in 1985 than there had been in 1981). Hence, appellees deduce that the two orders, taken together, show that productive acreage has been, and is still being, drained by the Moore McCormack wells.

The 1985 evidence shows that the lands subject to drainage (Zones 1, 5 & 6) were not productive, and the lands that were productive (Zones 2 & 4) were not subject to drainage. Since this evidence is more recent than contrary evidence adduced pursuant to the 1983 order, and MIPA requires determinations to be made based on circumstances existing at the time of the offer, we see nothing arbitrary or capricious in the Commission's reliance upon that evidence.

The other argument—that even if the lands were nonproductive, it was because they had been drained in the period between surveys—is specious. First, Prudential presented new evidence which tended to show that the 1983 order was based on inaccurate information. That evidence indicated that, contrary to the 1983 order's finding, Zone 1 had *never* been productive, not that it had been drained in the meantime. It also showed no productive acreage in Zones 5 and 6, and a slightly lower amount of productive acre-feet in Zone 4. But it does *not* identify a well that drained the acreage. The inference that a Prudential well drained the acreage is entirely appellees'. An equally likely inference is that the 1983 findings were mistaken. The Commission was entitled to rely on the newer evidence and findings.

■ Taken as a whole, the evidence in the Commission's Findings of Fact 18–20 does not exclusively support the inference that the Prudential wells drained the lands in the period between the two findings. Appellees' contention to the contrary depends on the unproven assumption that the 1985 findings differ from the 1983 findings because of drainage, not because the newer findings might simply be based upon more accurate evidence. The Commission was thus entitled to choose the latter inference, and having done so, it was not arbitrary or capricious for the Commission to decide that there was no drainage of productive acreage.

Even if the 1985 findings had shown such drainage, the evidence in the 1985 order showed that the well that the Broussards sought to pool with their acreage could not have been one of the wells that was responsible for such drainage. Hence, the agency could reasonably conclude that it would not be fair and reasonable for Moore McCormack to pool with that well, since appellees' gas would not contribute to the production Moore McCormack would have to share with appellees.

Our decision does not leave appellees without any remedy if they are in fact injured. The 1985 order requires Prudential (and hence its successors) to notify appellees should they, at some point in the future, drill wells that do drain appellees' productive acreage. Or, assuming a showing that Zones 5 and 6 are productive and are being drained by Prudential wells, appellees could offer to pool with *those* wells. But the offer that appellees actually made was not fair and reasonable in the terms afforded *at the time it was made.*

Appellees have brought a crosspoint seeking our determination of the effective date of the Commission order, but since that crosspoint depended on their prevailing on the other points in this appeal, it is overruled. Our disposition of appellants' other points of error is unnecessary.

## CONCLUSION

Appellants' first point of error is sustained, the judgment of the trial court is reversed, and we here render judgment that the Railroad Commission's Final Order in Docket No. 3–85,139 is affirmed.