

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00465-CV

**AMMONITE OIL AND GAS CORPORATION,**
Appellant

v.

**RAILROAD COMMISSION OF TEXAS** and EOG Resources, Inc.,
Appellees

From the 36th Judicial District Court, McMullen County, Texas
Trial Court No. M-18-0003-CV-A
Honorable Janna Whatley, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: October 27, 2021

AFFIRMED

This appeal arises from an oil and gas case involving an application by Ammonite Oil and Gas Corporation to force pool its mineral interest in State-owned riverbed acreage with adjacent oil wells operated by EOG Resources, Inc. The Texas Railroad Commission (the "Commission") denied and dismissed Ammonite's application under the Mineral Interest Pooling Act and the trial court affirmed the Commission's order. Ammonite appealed to this court. We affirm.

**BACKGROUND AND PROCEDURAL HISTORY**

Ammonite is the lessee under an oil and gas lease granted by the State of Texas covering riverbed acreage of the Frio River in McMullen County within the Eagle Ford Shale. EOG drilled sixteen wells on adjacent tracts on both sides of Ammonite's riverbed tract in the Eagleville Field. Ammonite made an offer to EOG to voluntarily pool its riverbed acreage with EOG's sixteen oil wells. EOG rejected the offer. Ammonite then filed applications with the Commission pursuant to the Mineral Interest Pooling Act ("MIPA") to force pool its leased riverbed tract into sixteen units with the wells operated by EOG. *See* TEX. NAT. RES. CODE ANN. §§ 102.001-.112. Ammonite's applications asserted that forced pooling was necessary under MIPA to prevent the waste of its riverbed minerals and to protect its correlative right to a fair share of the common reservoir's production. The Commission consolidated Ammonite's sixteen applications.

EOG objected to the MIPA applications and a contested administrative hearing was held before Commission hearing examiners on January 25-26, 2017. EOG presented the expert testimony of Tim Smith, a petroleum engineer. Ammonite presented no expert testimony in support of its applications. In their proposal for decision, the hearing examiners recommended approval of fifteen of Ammonite's sixteen applications for forced pooling. Upon its review, the Commission rejected the examiners' recommendation and issued a Consolidated Final Order on November 7, 2017 denying and dismissing all of Ammonite's applications based on the following findings of fact and conclusions of law:

Findings of Fact

1. Notice of the hearing was provided ….

2. In addition, notice was published ….

3. At various times on [sic] 2015, Ammonite sent voluntary pooling offers to EOG for each of the sixteen (16) proposed MIPA units in these dockets.

4. All sixteen (16) wells are classified as oil wells.

5. Ammonite proposed a unit of 550.02 acres for the EOG Naylor Jones Unit 26, Well No. 2H. Ammonite proposed units ranging in size from 43.6 to 98.64 acres for the other fifteen (15) wells.

6. Ammonite did not provide survey data or a metes and bounds description of the riverbed to establish the precise acreage to be force pooled into any of the sixteen (16) wells.

7. None of the sixteen (16) wells produce hydrocarbons from or drain the adjacent riverbed tracts.

8. At the hearing, Ammonite agreed with a greater charge for risk than the 10% listed in its voluntary pooling offer for each of the sixteen (16) wells if the Commission recommended same.

9. Formation of the proposed MIPA units for the sixteen (16) existing wells will not access or produce any of the hydrocarbon reserves under Ammonite's adjacent riverbed tracts.

10. Ammonite offered no expert witnesses or evidence of drainage areas of any wells.

11. Compulsory pooling will not prevent waste, protect Ammonite's correlative rights, or prevent the drilling of unnecessary wells. The applicant failed to meet its burden of proof to prove that the granting of the application is necessary to prevent waste, protect correlative rights, or avoid the unnecessary drilling of wells. In the record, there is simply no evidence showing that forced pooling these wells will prevent waste or protect correlative rights—the wells have been drilled and are producing; they do not and will not produce riverbed minerals.

Conclusions of Law

1. Pursuant to Texas Natural Resources Code 102.016, notice of the hearing was given to all interested parties . . . .

2. Ammonite failed to make a fair and reasonable offer to voluntarily pool as required by Texas Natural Resources Code 102.013.

3. Force pooling will not prevent waste, protect correlative rights, or avoid the drilling of unnecessary wells as required by Texas Natural Resources Code 102.011.

4. The Commission lacks authority to issue a compulsory pooling order for the Naylor Jones Unit 26 No. 2H because Ammonite's proposed unit size exceeds

the limits authorized by Texas Natural Resources Code 102.011 and cannot be reformed.

5. Because the applicant failed to meet its burden of proof to prove that the granting of the application is necessary to prevent waste, protect correlative rights, or avoid the unnecessary drilling of wells, the necessary pre-requisites for MIPA pooling have not been established. Ammonite's applications for all sixteen (16) units must be denied.

Ammonite filed a petition for judicial review of the Commission's Order in the district court of the county where the land is located.[1] *See* TEX. NAT. RES. CODE ANN. § 102.111 (providing for judicial review of the Commission's final order in a manner other than trial de novo); *id.* § 102.112 (venue). Based on its review of the administrative record and the parties' briefs, the trial court affirmed the Commission's Order. Ammonite appealed.

On appeal, Ammonite asserts the Commission misinterpreted the MIPA requirements to obtain a forced-pooling order under section 102.011 and deviated from its own precedent, and the district court erred in failing to address those issues of law.

### DISCUSSION

***Standard of Review: Judicial Review of Commission's Administrative Order***

In a judicial review of the Commission's decision in a contested case, the court applies the substantial evidence standard of review. TEX. GOV'T CODE ANN. § 2001.174; *R.R. Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995). "This is a limited standard of review that gives significant deference to the agency in its field of expertise." *Torch*, 912 S.W.2d at 792. Under this standard of review, the reviewing court may reverse or remand for further proceedings only if it concludes that the appellant's substantial rights have been prejudiced "because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of

---

[1] Ammonite did not challenge the Commission's denial of its forced-pooling application for the EOG Naylor Jones Unit 26, Well No. 2H, because the proposed unit size was too large. (*See* the Commission's Finding of Fact #5 and Conclusion of Law #4).

a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." TEX. GOV'T CODE ANN. § 2001.174(2); *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). Judicial review of the Commission's decision is based on the administrative record. TEX. NAT. RES. CODE ANN. § 102.111; *R.R. Comm'n of Tex. v. Pend Oreille Oil & Gas Co.*, 817 S.W.2d 36, 40 (Tex. 1991).

A court applying the substantial evidence standard of review may not substitute its judgment for that of the state agency "on the weight of the evidence on questions committed to agency discretion." TEX. GOV'T CODE ANN. § 2001.174; *Mireles v. Tex. Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999). In reviewing fact-based determinations, a court must determine whether, considering the reliable and probative evidence in the record as a whole, some reasonable basis exists in the record for the agency's action. TEX. GOV'T CODE ANN. § 2001.174(2)(E); *Tex. Indus. Energy Consumers v. CenterPoint Energy Hous. Elec., LLC*, 324 S.W.3d 95, 105 n.60 (Tex. 2010). "Substantial evidence requires only more than a mere scintilla, and 'the evidence on the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence.'" *Torch*, 912 S.W.2d at 792-93 (quoting *Tex. Health Facilities Comm'n v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984)). "The issue for the reviewing court is not whether the agency reached the correct conclusion, but rather whether there is some reasonable basis in the record for the action taken by the agency." *Id.* at 792; *Mireles*, 9 S.W.3d at 131 (courts must affirm administrative findings in contested cases if there is more than a scintilla of evidence to support them); *Charter Medical*, 665 S.W.2d at 453 (agency's decision will be sustained if the evidence is such that "reasonable minds could have reached the conclusion the

agency must have reached in order to justify its action"). The court presumes the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence and the appealing party bears the burden to demonstrate otherwise. *Maverick Cty. v. R.R. Comm'n of Tex.*, No. 03-14-00257-CV, 2015 WL 9583873, at *2 (Tex. App.—Austin Dec. 29, 2015, pet. denied) (mem. op.).

With respect to the agency's conclusions of law, a court reviews them de novo under traditional principles of statutory construction. *Tex. Citizens for a Safe Future*, 336 S.W.3d at 624; *see Wimberley Springs Partners, Ltd. v. Wimberley Valley Watershed Assoc.*, No. 03-13-00467-CV, 2017 WL 2229876, at *3 (Tex. App.—Austin May 19, 2017, no pet.) (mem. op.) (reciting statutory construction principles). However, the agency's interpretation of a statute it is authorized to enforce and construe is given some deference. *Tex. Citizens for a Safe Future*, 336 S.W.3d at 624-25 (agency's interpretation of statute it is charged with enforcing is entitled to "serious consideration" as long as the construction is reasonable and does not conflict with the statute's plain language). The Supreme Court has recognized that the Railroad Commission "has long been the agency charged with regulating matters related to oil and gas production, and is given broad discretion in its administration of oil and gas laws." *Id.* at 630 (citing TEX. NAT. RES. CODE ANN. § 85.202(b)). As such, "[t]he Commission must have discretion in determining the minutiae of its statutory mandates." *Id.* at 631. "Such deference is particularly appropriate where the statutes and rules at issue concern a matter within the core expertise of the agency." *Wimberley Springs*, 2017 WL 2229876, at *3.

On appeal from a district court's review of an administrative order, the appellate court reviews the district court's decision de novo. *Tex. Dep't Public Safety v. Cuellar*, 58 S.W.3d 781, 783 (Tex. App.—San Antonio 2001, no pet.).

### *Mineral Interest Pooling Act (MIPA)*

Under MIPA, a mineral interest owner may apply for a forced pooling order from the Commission to pool its property with other owners' proposed or existing wells on the same proration unit within a common reservoir. TEX. NAT. RES. CODE ANN. § 102.011. The applicant must first make a fair and reasonable offer to the owner/operator(s) of the other well(s) to voluntarily create a pooled unit prior to filing an application under MIPA. TEX. NAT. RES. CODE ANN. § 102.013; *Pend Oreille*, 817 S.W.2d at 39-40 (qualifying pooling offer invokes the Commission's jurisdiction over a MIPA application). If a fair and reasonable voluntary pooling offer is not accepted, the mineral interest owner/lessee may file a MIPA application with the Commission for forced pooling. TEX. NAT. RES. CODE ANN. § 102.011 (pre-condition to forced pooling is that the owners have not agreed to voluntarily pool their interests). To obtain Commission approval of its MIPA application, the mineral interest owner must meet one of three statutory requirements by establishing that the proposed force-pooled unit(s) would (1) avoid the drilling of unnecessary wells, (2) protect correlative rights, or (3) prevent waste. TEX. NAT. RES. CODE ANN. § 102.011. The applicant has the burden to present substantial evidence showing that its voluntary pooling offer was fair and reasonable and that one of the three statutory requirements for forced pooling exists. *Pend Oreille Oil & Gas Co. v. R.R. Comm'n of Tex.*, 788 S.W.2d 878, 885 (Tex. App.—Corpus Christi-Edinburg 1990), *aff'd in part*, 817 S.W.2d 36 (Tex. 1991). Here, the Commission found that Ammonite's voluntary pooling offers to EOG were not fair and reasonable and dismissed Ammonite's MIPA applications on that basis. The Commission also found that Ammonite failed to meet its burden to establish one of the three statutory requirements for forced pooling and alternatively denied Ammonite's applications.

*Fair and Reasonable Offers to Voluntarily Pool*

We first address the jurisdictional issue that led to the Commission's dismissal of Ammonite's forced-pooling applications – its determination that Ammonite's voluntary pooling offers were not fair and reasonable. *See Pend Oreille*, 817 S.W.2d at 40. A fair and reasonable offer to voluntarily pool is a precondition to any forced-pooling application under MIPA. TEX. NAT. RES. CODE ANN. §§ 102.011, 102.013. If an applicant's voluntary pooling offer is not fair and reasonable, the Commission lacks jurisdiction over the forced-pooling application and must dismiss it. *Id.* § 102.013(b) ("The Commission shall dismiss the application if it finds that a fair and reasonable offer to pool voluntarily has not been made by the applicant."); *see Carson v. R.R. Comm'n of Tex.*, 669 S.W.2d 315, 316 (Tex. 1984) (characterizing the issue as jurisdictional). The court explained in *Carson*, "[i]n the absence of a finding of reasonable offers a dismissal ... may be more in keeping with the spirit of the act … the Texas statute differs from similar statutes of other states by its emphasis on voluntary pooling … *If a bona fide attempt to reach a contractual agreement is not considered a condition precedent to invoking the compulsory process, much of the deliberately unique language in the Texas statute is rendered meaningless.*" *Id.* at 318 (quoting E. Smith, *The Texas Compulsory Pooling Act*, 44 Tex. L. Rev. 387, 393 (1966)). Thus, "[t]he Act … is more aptly described as 'an Act to encourage voluntary pooling—rather than an Act to provide compulsory state action.'" *Pend Oreille*, 817 S.W.2d at 40 (quoting E. Smith, *The Texas Compulsory Pooling Act*, 43 Tex. L. Rev. 1003, 1009 (1965)).

The MIPA does not define the phrase "fair and reasonable offer to pool voluntarily." *See* TEX. NAT. RES. CODE ANN. § 102.013. The meaning is therefore "left to the Commission's discretion" in each case. *Pend Oreille*, 817 S.W.2d at 40. The voluntary pooling offer must, however, be "one which takes into consideration those relevant facts, existing at the time of the offer, which would be considered important by a reasonable person in entering into a voluntary

agreement concerning oil and gas properties." *Id.* at 41 (citing *Carson*, 669 S.W.2d at 318). The fairness and reasonableness of the pooling offer is judged from the viewpoint of the party being asked to pool. *Id.* at 43. A court reviews the Commission's findings and conclusions about fair and reasonable pooling offers by examining the relevant facts in existence at the time of the offer. *Id.* at 41. Section 102.013(a) requires the MIPA applicant to "set forth in detail the nature of the voluntary pooling offer made." TEX. NAT. RES. CODE ANN. § 102.013(a); *Carson*, 669 S.W.2d at 317.

Even though the requirement of a fair and reasonable pooling offer is considered a jurisdictional issue, a reviewing court still applies the substantial evidence standard and affords substantial deference to the Commission's decision as to whether the offer was fair and reasonable. *Pend Oreille*, 817 S.W.2d at 41-42 (noting that *Carson* involved a unique situation where the jurisdictional issue could be resolved as a matter of law). As discussed above, the substantial evidence standard is "[a]t its core … a reasonableness test or a rational basis test." *Id.* at 41. It follows then that "[t]he commission's application of the statutory term ["fair and reasonable offer to pool voluntarily"] to the facts in each case is conclusive unless it is unreasonable." *Id.* at 42; *Tex. Health Facilities*, 665 S.W.2d at 453 (the agency's action will be sustained if the evidence is such that reasonable minds could have reached the same conclusion the agency must have reached to justify its decision); *R.R. Comm'n of Tex. v. Broussard*, 755 S.W.2d 951, 955 (Tex. App.—Austin 1988, writ denied) (determination of whether voluntary pooling offers are fair and reasonable is a mixed question of fact and law which is entitled to substantial deference).

Here, the Commission reached the legal conclusion that Ammonite's voluntary pooling offers to EOG were not "fair and reasonable" as required by MIPA section 102.013 (Conclusion of Law #2) and dismissed the MIPA applications on that basis. The Commission's conclusion was based on its factual findings that: Ammonite failed to provide survey data or a metes and bounds

description of the riverbed to establish the precise acreage to be pooled (Finding of Fact #6); none of the EOG's sixteen wells produce hydrocarbons from or drain Ammonite's riverbed tracts (Finding of Fact #7); and Ammonite agreed that a greater charge for risk than the 10% listed in its voluntary pooling offers was reasonable (Fact Finding #8). Upon review, the district court determined that the Commission's fact findings were supported by more than a scintilla of evidence in the administrative record and affirmed. We must determine whether the record contains substantial evidence to support the Commission's findings and conclusion regarding Ammonite's voluntary pooling offers. *Pend Oreille*, 817 S.W.2d at 41-42.

We begin with the Commission's finding regarding Ammonite's proposed charge for risk in its pooling offers to EOG. The only evidence in the administrative record with respect to the charge for risk contained in Ammonite's voluntary pooling offers consists of the terms of the offers sent by Ammonite to EOG (Ammonite's Exhibits #37-43) and the testimony of Tim Smith, EOG's expert witness. Ammonite's voluntary pooling offers to EOG proposed formation of sixteen (16) pooled units subject to a mutually acceptable joint operating agreement with EOG as operator and a 10% charge for risk attached to the working interest component. At the administrative hearing, Ammonite asserted that its proposed 10% charge for risk is reasonable in an unconventional resource play like the Eagleville Field and a 10% charge has been approved by the Commission in similar resource play situations. Ammonite conceded that a higher charge for risk would be fair and reasonable and "would not be adverse."

Smith testified that Ammonite's proposed 10% charge for risk was unreasonably low and that a 100% charge for risk would be fair and reasonable. Smith explained that a "charge for risk" is intended to compensate the operator for the risks undertaken in drilling wells and "to cover the cost of money." Smith testified and presented documentary evidence showing that the Eagle Ford shale play within the Eagleville Field has extremely limited permeability necessitating the use of

unconventional drilling and completion techniques that result in a substantial percentage of wells drilled not being commercially successful. Smith explained that Ammonite's inclusion of only a 10% charge for risk in its pooling offers was unreasonably low because a large resource play like the Eagle Ford requires an investment in large amounts of acreage and the drilling of a significant number of wells in order to be commercially successful, not just drilling one individual well in a single unit. Smith opined that, under the circumstances, a 100% charge for risk would be reasonable and more appropriate. Ammonite presented no expert testimony or technical evidence to controvert Smith's testimony that the 10% charge for risk in Ammonite's offers was not fair and reasonable.

Based on the deferential standard of review, the Commission's decision must be upheld if there is some reasonable basis in the record for its decision, i.e., substantial evidence. *Torch*, 912 S.W.2d at 792-93; *Pend Oreille*, 817 S.W.2d at 42 (commission's application of term "fair and reasonable offer to pool voluntarily" to the facts of the case is conclusive unless it is unreasonable). We conclude there is a reasonable basis for the Commission's fact finding and conclusion that Ammonite's voluntary pooling offers were not fair and reasonable based on a 10% charge for risk being unreasonably low according to Smith's uncontroverted testimony. Substantial evidence supports the Commission's decision and its dismissal of Ammonite's MIPA applications for lack of jurisdiction. We therefore do not reach Ammonite's other issues on appeal.

CONCLUSION

Based on the foregoing reasons, we affirm the district court's order upholding the Commission's decision.

Liza A. Rodriguez, Justice